IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 17, 2013 Session

# RICHARD McGARITY and TERESA McGARITY v. CORBIN JERROLDS and AMBER JERROLDS

**Direct Appeal from the Chancery Court for Hardin County**
**No. CH-100      Ron E. Harmon, Chancellor**

---

**No. W2013-00250-COA-R3-CV - Filed August 27, 2013**

---

This is a grandparent visitation case. The trial court awarded visitation to paternal grandparents on the basis of a finding of severe emotional harm to the child if visitation was not granted. The child's mother and adoptive father appeal. We affirm the trial court's ruling with regard to the evidentiary and procedural issues, but reverse as to the finding of a likelihood of severe emotional harm. Affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded**

J. Steven Stafford, J., delivered the opinion of the Court, in which Alan E. Highers, P.J., W.S., and David R. Farmer, J., joined.

J. Gilbert Parrish, Jr., Savannah, Tennessee, for the appellants, Corbin Jerrolds and Amber Jerrolds.

Terry L. Wood, Adamsville, Tennessee, for the appellees, Richard McGarity and Teresa McGarity.

**OPINION**

**I. Background**

Appellants Corbin Jerrolds and Amber Jerrolds ("Mother," and together with Mr. Jerrolds, "Appellants") are the biological mother and adoptive father of the minor child (born in 2009) at issue in this case. Appellees Richard McGarity and Teresa McGarity (together with Mr. McGarity, "Grandparents") are the paternal grandparents of the child. Mother and the child's biological father divorced and Mother married Mr. Jerrolds. After the marriage,

Mr. Jerrolds adopted the child. After the adoption, Appellants determined that visitation with Grandparents was no longer in the child's best interest. Due to the cessation of visitation, the Grandparents filed a petition for grandparent visitation.

At trial, the parties stipulated that Grandparents had a substantial relationship with the child. The parties testified that Grandparents babysat the child three or four times a week and kept him two or three days a month on weekends. After Mother married Mr. Jerrolds, however, the visitation was modified to every Friday from 7:30 a.m. to 5:00 p.m. Visitation of any kind ended on February 1, 2012. Mother testified that she terminated visitation because it made the child confused and she did not want the child to learn that his biological father voluntarily relinquished his parental rights until he was old enough to process that information. Mother also testified that it was emotionally painful for her to maintain the relationship with Grandparents. Mother finally testified that she wanted to foster the child's relationship with Mr. Jerrolds and the child's new grandparents. According to Mother, continuing to visit Grandparents was an obstacle to furthering those relationships due to complications and conflicts that could arise in seeking to accommodate three sets of grandparents, as well as the stress caused by scheduling the visits. Mother also testified that after the cessation of visitation, she observed no adverse consequences to the child. Mr. Jerrolds likewise testified to his concern that continued visitation would prevent the creation of a cohesive family unit. According to both Mother and Mr. Jerrolds, since the time Mr. Jerrolds adopted the child, the child knows Mr. Jerrolds as his Father and the child has responded well to that relationship. According to Mother, only after visits with Grandparents, did the child become confused about who his father is or who Mr. Jerrolds is in relation to himself. Finally, Mother, Mr. Jerrolds, maternal grandmother, and another witness testified that since the cessation of visitation with Grandparents, the child has not exhibited any signs of harm; instead, they all testified that he is a happy and well-adjusted child. However, maternal grandmother also admitted that she believed the child would suffer substantial harm if her own relationship with the child were severed.

In contrast, Ms. McGarity testified that they had a close and loving relationship with the child. Grandparents submitted several photographs and a video of them interacting with the child. Ms. McGarity testified that she and her husband were close with the child and that cutting the child off from them could hurt the child. A witness testified that when she observed Grandparents returning the child to Mother, the child would cry and not want to leave Grandparents. Another witness also testified that when she saw the child approximately four to six weeks after the cessation of visitation and mentioned Grandparents to the child, the child became excited and called out paternal grandmother's name. Ms. McGarity also denied that she or her husband ever attempted to confuse the child with regard to who his father is.

The trial court took the matter under advisement at the conclusion of trial and asked each party to prepare proposed findings of fact and conclusions of law. The trial court entered an order on December 17, 2012, which incorporated by reference the proposed findings of fact and conclusions of law prepared by Grandparents in their entirety. In the order, the trial found that the cessation of visitation between the child and paternal grandparents was likely to cause substantial harm to the child. The paternal grandparents were, therefore, awarded visitation one weekend a month and on Christmas Day, with permission to attend all school and sporting events in which the child participates. Grandparents later filed a Motion for Discretionary Costs, which was denied by Judge C. Creed McGinley, sitting for the trial court by interchange, on May 3, 2013.

Appellants appealed, raising the following issues, which are restated from their brief:

1. Whether the trial court erred in permitting the admission of photos and videotape over the objection of counsel after a stipulation that Grandparents had a substantial relationship with the child?

2. Whether the trial court erred in not making its own independent findings of fact and conclusions of law when it simply approved the proposed findings of fact and conclusions of law of Grandparents?

3. Does the Grandparents' visitation violate Appellants' fundamental rights as parents under the Tennessee and U.S. Constitutions to exercise control over the care and custody of their children?

4. Did the trial court err in concluding that visitation is in the best interests of the child?[1]

---

[1] In their brief, Grandparents also argue that Judge McGinley erred in denying their motion for discretionary costs. However, Grandparents fail to designate this as an issue in a Statement of the Issues section in their brief. *See Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (concluding that Appellee waived affirmative issues on appeal by failing to include the issues in a Statement of the Issues section in the Appellee's appellate brief). In addition, Grandparents fail to cite any law to support their discretionary costs request. The failure to cite authority to support an argument on appeal constitutes a waiver of the issue. *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue). Even assuming, *arguendo*, that this issue was properly raised and argued on appeal, discretionary costs are only awarded to the prevailing party. *See* Tenn. R. Civ. P. 54.04 ("Costs . . . shall be allowed to the prevailing party . . . ."). Because we have concluded that the trial court erred in granting visitation to Grandparents, they are no longer the prevailing party in this case. Accordingly, we decline to award them discretionary costs.

## II. Analysis

Because this case was heard by the trial court, sitting without a jury, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. ***Blair v. Brownson***, 197 S.W.3d 681, 684 (Tenn. 2006) (citing ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000)). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***4215 Harding Road Homeowners Ass'n. v. Harris***, 354 S.W.3d 296, 305 (Tenn. Ct. App. 2011); ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000).

### A. Admission of Photographs and Video

The Appellants first argue that the trial court erred in permitting the admission of photographic and video evidence showing the relationship between Grandparents and the child. Trial courts are given wide latitude on evidentiary decisions and we will only overturn the trial court's decision upon a showing of an abuse of discretion. ***Danny L. Davis Contractors, Inc. v. Hobbs***, 157 S.W.3d 414, 419 (Tenn. Ct. App. 2004). "The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." ***Id.*** (citing ***Crowe v. First Am. Nat'l Bank***, No. W2001-00800-COA-R3-CV, 2001 WL 1683710, at *9 (Tenn. Ct. App. Dec. 10, 2001)).

From our review of the record, however, counsel for Appellants did not object to these photographs until after counsel for Grandparents had questioned Ms. McGarity about them. In addition, when counsel for Grandparents offered the compact disc containing the allegedly objectionable photographs as evidence, the trial court specifically asked counsel for Appellants if there was an objection. Counsel for Appellants responded only that he wanted an opportunity to review the compact disc, not that he had an objection to the admission of the photographs. Further, when counsel for Grandparents sought to introduce the video of Grandparents with the child, the trial court again asked for any objections. Counsel for Appellants responded that there were no objections subject to his review of the video. According to the record before this Court, counsel for Appellants did not raise any objections to either the photographic or video evidence subsequent to their review.

In most cases, in order to raise an issue on appeal regarding the admissibility of evidence, the party raising the issue must have made a contemporaneous objection. It is

well-settled that the failure to raise a contemporaneous objection to the admission of evidence at the time the evidence is introduced at trial results in waiver of the particular issue on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of the error."); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). In this case, counsel for Appellants did not object to the questions regarding the photographs until after several of the photographs had been admitted. In addition, counsel for Appellants did not raise any objection when Grandparents' counsel sought to introduce the compact disc of the photographs as evidence. Further, counsel for Appellants made no objection to the admission of the video evidence. Under these circumstances, any argument that the trial court erred in admitting this evidence is waived.

## B. Proposed Findings of Fact and Conclusions of Law

The Appellants next argue that the trial court erred in requesting that the parties submit proposed findings of fact and conclusions of law and then adopting Grandparents' proposed order in its entirety. Specifically, the trial court entered a judgment that incorporated by reference the findings of Grandparents. This issue was recently discussed in *Beach Community Bank v. Labry*, No. W2011-01583-COA-R3-CV, 2012 WL 2196174 (Tenn. Ct. App. June 15, 2012):

> [A]fter the adoption of the Tennessee Rules of Civil Procedure, the Supreme Court, in *Delevan-Delta Corp. v. Roberts*, 611 S.W.2d 51 (Tenn.1981), recognized that "the thorough preparation of suggested findings and conclusions by able counsel can be of great assistance to the trial court." *Id.* at 52–53. Accordingly, the Supreme Court held that "although it is improper for the trial court to require counsel to prepare findings, it is permissible and indeed sometimes desirable for the trial court to permit counsel for any party to submit proposed findings and conclusions." *Id.* at 53.

> The decision in Roberts was discussed in detail by this Court in *Madden Phillips Const., Inc. v. GGAT Development Corp.*, 315 S .W.3d 800 (Tenn. Ct. App. 2009). According to this Court:

> > The *Roberts* court offered guidance to lower courts when establishing findings of fact. The court maintained a clear preference for

factual findings that are a product of the judges own labor. [***Delevan–Delta Corp. v. Roberts***, 611 S.W.2d 51, 53 (Tenn. 1981).] The ***Roberts*** court recognized, however, that other procedures sufficiently maintain the independence and impartiality of courts that adopt party-prepared findings. The court stated that trial judges may rely on party-prepared findings, so long as they carefully review proposed findings to ensure that the findings reliably reflect the court's opinion based on the testimony and evidence produced at trial. ***Id.*** The court also recognized a need to ensure that the proposed findings dispose of all relevant issues. ***Id.*** The court advised trial courts to "ascertain that [party-prepared findings] adequately dispose of all material issues, and to assure that matters not a proper part of the determination have not been included." ***Id.***

[***Madden Phillips***, 315 S.W.3d] at 810–11.

***Labry***, 2012 WL 2196174, at *5. In addition, this Court discussed the case of ***Airline Construction, Inc. v. Barr***, 807 S.W.2d 247 (Tenn. Ct. App. 1990), in which the Court held that "the trial court did not err in requesting the parties to submit proposed findings to the court and eventually adopting verbatim the order that 'best represent[ed] the opinion of the [c]ourt.'" ***Labry***, 2012 WL 2196174, at *5 (citing ***Barr***, 807 S.W.2d at 253).

The situation in this case is similar to that presented in ***Barr.*** Here, the trial court requested that both parties submit proposed findings of fact and conclusions of law. Nothing in the record indicates that the trial court failed to review both proposed orders before entering the order prepared by Grandparents. Further, "[n]othing in the record indicates that the order entered does not reflect the trial court's view of the case." ***Labry***, 2012 WL 2196174, at *5. This issue concerns only whether the trial court erred in adopting party-prepared findings, not whether those findings are supported by the preponderance of the evidence. Accordingly, we hold that the trial court's decision to adopt the Appellant's findings of fact and conclusions of law was not reversible error.

### C. Substantial Harm

Appellants next argue that the trial court's ruling granting continued visitation to

Grandparents violates their constitutional rights.[2] As we perceive it, from both Appellants' brief and oral argument, Appellants do not argue that the Grandparent Visitation Statute is facially unconstitutional;[3] rather, Appellants contend that the trial court erred in concluding that Grandparents submitted sufficient evidence to support a finding that substantial harm would come to the child upon cessation of the Grandparents' visitation; accordingly, Appellants argue that there is insufficient evidence to satisfy the requirements of the Grandparent Visitation Statute, and to justify the grant of grandparent visitation. In other words, the Appellants argue that because the evidence in the record is not sufficient to prove substantial harm to the child from cessation of the grandparent-grandchild relationship, the trial court's order granting grandparent visitation violates both the Appellants' Constitutional privacy interests, and the Tennessee Grandparent Visitation Statute.

Tennessee Code Annotated Section 36-6-306, commonly referred to as the Grandparent Visitation Statute, governs Grandparents' petition for visitation in this case. The Statute states, in pertinent part:

> (a) Any of the following circumstances, when presented in a
> petition for grandparent visitation to the circuit, chancery,

---

[2] As a point of practice, we note that Grandparents have standing to petition the court for grandparent visitation with the child despite the fact that Grandparents' son, who is the biological father of the child, allowed his parental rights to the child to be terminated and the child was adopted by his step-father, Mr. Jerrolds. *See* Tenn. Code Ann. § 36-6-306 (d)(1) ("Notwithstanding the provisions of § 36-1-121, if a relative or stepparent adopts a child, the provisions of this section [e.g., the Grandparent Visitation Statute] apply.")

[3] Even if the Appellants do contend that the Grandparent Visitation Statute is facially unconstitutional, this argument was not properly raised in the trial court, or on appeal. Rule 24.04 of the Tennessee Rules of Civil Procedure provides:

> When the validity of a statute of this state or an administrative rule or
> regulation of this state is drawn in question in any action to which the State
> or an officer or agency is not a party, the court shall require that notice be
> given the Attorney General, specifying the pertinent statute, rule or
> regulation.

*Id.* This Court has previously held that failure to notify the Attorney General of the litigant's intent to challenge the validity of a statute in the trial court in accordance with Rule 24.04 operates as a waiver of the issue on appeal. *See* **Buettner v. Buettner**, 183 S.W.3d 354 (Tenn. Ct. App. 2005). The Tennessee Supreme Court has noted, however, that the failure to provide notice is not fatal when the challenged statutes are so clearly or blatantly unconstitutional as to obviate the necessity for any discussion." ***In re Adoption of E.N.R.***, 42 S.W.3d 26, 28 (Tenn. 2001).The Tennessee Grandparent Visitation Statute is not "so clearly or blatantly unconstitutional as to obviate the necessity for any discussion." *Id.* Accordingly, we decline to consider its facial constitutionality.

general sessions courts with domestic relations jurisdiction or juvenile court in matters involving children born out of wedlock of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents:

(1) The father or mother of an unmarried minor child is deceased;
(2) The child's father or mother are divorced, legally separated, or were never married to each other;
(3) The child's father or mother has been missing for not less than six (6) months;
(4) The court of another state has ordered grandparent visitation;
(5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent or parents (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or
(6) The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance of the relationship, this relationship was severed by the parent or parents for reasons other than abuse or presence of a danger of substantial harm to the child, and severance of this relationship is likely to occasion substantial emotional harm to the child.

(b)(1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child. Such finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:

(A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;
(B) The grandparent functioned as a primary caregiver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional

harm; or

(C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

\* \* \*

(3) A grandparent is not required to present the testimony or affidavit of an expert witness in order to establish a significant existing relationship with a grandchild or that the loss of the relationship is likely to occasion severe emotional harm to the child. Instead, the court shall consider whether the facts of the particular case would lead a reasonable person to believe that there is a significant existing relationship between the grandparent and grandchild or that the loss of the relationship is likely to occasion severe emotional harm to the child.

\* \* \*

(c) Upon an initial finding of danger of substantial harm to the child, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, reasonable visitation may be ordered.

Before we consider the substantive issue raised in this appeal, we briefly review the law on grandparent visitation in Tennessee. As explained in this Court's opinion in ***Green v. Evans***, No. M2011-00276-COA-R3-CV, 2012 WL 1107887 (Tenn. Ct. App. March 30, 2012):

> The decisions of the U.S. Supreme Court and the Tennessee Supreme Court, interpreting the federal and state constitutions, explicitly prohibit any judicial assumption that grandparent/grandchild relationships always benefit the child, as contrary to the parents' fundamental right to raise their children as they see fit. *See **Troxel v. Granville***, 530 U.S. 57, 66–72, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (recognizing parents' fundamental constitutional right to make decisions on care, custody and control of children, finding trial court erred in presuming grandparent visits are in best interest of children);

> ***Hawk v. Hawk***, 855 S.W.2d 573, 577–82 (Tenn. 1993)
> (recognizing parents' fundamental constitutional right, finding
> trial court engaged in "sentimental" commentary on
> grandparents and erred in "unquestioning judicial assumption"
> that grandparent-grandchild relationship always benefits child,
> basing award of grandparent visitation on that presumed
> benefit). To avoid such an assumption, the Tennessee
> constitution and Tennessee's grandparent visitation statute
> require a grandparent seeking visitation to prove, as a threshold
> requirement, that the child will be in danger of substantial harm
> if visitation is not ordered by the court. ***Hawk***, 855 S.W.2d at
> 581; Tenn. Code Ann. § 36-6-306(b)(1). . . . Under ***Troxel***,
> pursuant to the federal constitution, in all phases of a proceeding
> on grandparent visitation, there is a presumption that a fit parent
> is acting in the child's best interest, and the court must accord
> special weight to the parent's determinations. ***Troxel***, 530 U.S.
> at 68, 70 (plurality opinion) ("there is a presumption that fit
> parents act in the best interests of their children.") . . . .

***Green***, 2012 WL 1107887, at *8.

Thus, the "substantial harm" component is the threshold question in grandparent
visitation cases. As explained in ***Hawk***:

> The requirement of harm is the sole protection that parents have
> against pervasive state interference in the parenting process. As
> one author has stated:
>
>> For the state to delegate to the parents the
>> authority to raise the child as the parents see fit,
>> except when the state thinks another choice would
>> be better, is to give the parents no authority at all.
>> 'You may do whatever you choose, so long as it
>> is what I would choose also' does not constitute a
>> delegation of authority.
>
> Bean, *Grandparent Visitation: Can the Parent Refuse?*, 24 U.
> Louisville J.Fam.L. 393, 441 (1985–6) [hereinafter Bean,
> *Grandparent Visitation* ]. . . .

-10-

\*   \*   \*

We, too, agree that neither the legislature nor a court may properly intervene in parenting decisions absent significant harm to the child from those decisions. . . . An approach requiring a court to make an initial finding of harm to the child before evaluating the "best interests of the child" works equally well in this case to prevent judicial second-guessing of parental decisions. As one scholar has written:

> If the courts attempt to resolve these disputes when the only thing at stake is a grandparent's argument that visitation is a 'better' decision for the child, the placement of the child with the parent becomes subject to the court's supervision and judgment of what are the best decisions for that child.

*See* Bean, *Grandparent Visitation*, *supra*, at 444–5.

By applying this type of analysis, we also seek to avoid the "unquestioning judicial assumption" that grandparent-grandchild relationships always benefit children, an assumption that overlooks the necessity of a threshold finding of harm before the state can intervene in the parent-child relationship.

\*   \*   \*

We hold that Article I, Section 8 of the Tennessee Constitution protects the privacy interest of these parents in their child-rearing decisions, so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right.

*Hawk*, 855 S.W.2d at 580–82 (footnote omitted).

Since the decision in *Hawk*, the Tennessee Grandparent Visitation Statute has been

-11-

amended to require proof of "the presence of a danger of substantial harm" as a threshold requirement in most cases.[4] *See* 2000 Tenn. Laws Pub. Ch. 891 (H.B. 2297) (2000) (amending the Grandparent Visitation Statute to include a substantial harm component). As succinctly discussed in Marlene Eskind Moses and Jessica J. Uitto, *The Current Status of Tennessee's Grandparent Visitation Law*, Tenn. B. J., Jan. 2010, at 46, 24:

> Because of the great deference that courts give to parental decisions, when the court addresses grandparent visitation rights, it must perform a lengthy and complex three-pronged analysis. First, the grandparent seeking the court's intervention must show that one of six situations exists pursuant to Tenn. Code Ann. § 36-6-306(a). Second, the court must determine whether there is a danger of substantial harm to the child if the child does not have visitation with the grandparent. The foregoing is based on three factors set out in Tenn. Code Ann. § 36-6-306(b)(1). In conjunction with this analysis, the court must also determine if the relationship between the child and grandparent is significant based on three more factors set out in Tenn. Code Ann. § 36-6-306(b)(2). Third, if the court finds that there is danger of substantial harm if the child does not have visitation with the grandparent, it must decide whether the visitation would be in the child's best interest based on seven factors under Tenn. Code Ann. § 36-6-307.

*Id.* (footnotes omitted).

In this case, there is no dispute that the Grandparents have standing to pursue their petition for grandparent visitation, or that the Appellants have severed the relationship

---

[4] Petitioning grandparents are not required to affirmatively prove substantial harm "when the parent of a deceased parent of a child seeks grandparent visitation, *see* Tenn. Code Ann. §36-6-306(b)(4) ("[I]f the child's parent is deceased and the grandparent seeking visitation is the parent of that deceased parent, there shall be a rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the child and grandparent."), or when the child resided in the home of the grandparents for a period of twelve or more months prior to being removed by the parents. *See* Tenn. Code Ann. § 36-6-306(a)(6) ("[T]this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child[.]"). In these two cases, the petitioning grandparents enjoy a presumption that substantial harm will occur if the relationship is terminated. Because Grandparents' son, the biological parent of the child at issue, is not deceased, and the child did not reside with Grandparents for one year prior to the cessation of the relationship, Grandparents in this case must meet the threshold requirement to show the "presence of a danger of substantial harm."

between Grandparents and the child. Further, the parties have stipulated that the child enjoyed a "substantial existing relationship" with Grandparents prior to the cessation of visitation. However, a finding of a substantial existing relationship, does not, *ipso facto*, lead to the conclusion that the cessation of that relationship will cause substantial harm to the child. Instead, the harm requirement is separate and distinct from a finding, or in this case, a stipulation, that the child has a significant existing relationship with the petitioning grandparents. As explained by this Court in ***Larson v. Halliburton,*** No. 2005 WL 2493478 (Tenn. Ct. App. Oct. 7, 2005):

> The statute also addresses the circumstances that will support a finding that the child will suffer substantial harm if his or her grandparents are not granted visitation. Tenn. Code Ann. § 36-6-306(b)(1) provides that the court may find substantial harm if the child has a "significant existing relationship" with his or her grandparents and (A) the loss of that relationship is "likely to occasion severe emotional harm to the child," (B) the grandparent functioned as a primary caregiver and that the cessation of that relationship "could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm," or (C) the loss of the relationship "presents the danger of other direct and substantial harm to the child." In addition, Tenn. Code Ann. § 36-6-306(a)(5) establishes a rebuttable presumption of "irreparable harm" if the child has "resided in the home of the grandparent for a period of twelve (12) months or more."

***Larson***, 2005 WL 2493478, at *5 (footnote omitted). The only provision at issue in this case is section (A): whether the loss of the significant existing relationship is "likely to occasion severe emotional harm to the child."[5] Thus, even with the stipulation regarding the "significant existing relationship," Grandparents were required to show that the child was likely to suffer "severe emotional harm" due to the termination of that relationship. Accordingly, on appeal, we must determine whether the loss of the child's relationship with Grandparents is likely to cause him "severe emotional harm."

As previously discussed, Grandparents had the burden to show a likelihood of severe

---

[5] Grandparents did not argue in the trial court, nor do they argue on appeal, that the cessation of visitation presents "the danger of other direct **and** substantial harm to the child." Tenn. Code Ann. § 36-6-306(b)(1)(C) (emphasis added). Nor do they argue that they served as primary care-givers to the child pursuant to Tennessee Code Annotated Section 36-6-306(b)(1)(B).

-13-

emotional harm to the child due to the loss of the grandparent-grandchild relationship. *See* Tenn. Code Ann. §36-6-306(C)(3) (requiring the grandparent to prove that "the loss of the relationship is **likely** to occasion severe emotional harm to the child") (emphasis added); *see also Uselton v. Walton*, No. M2012-02333-COA-R3-CV, 2013 WL 3227608, at *16 (Tenn. Ct. App. June 21, 2013) (framing the question, in *dicta*, as "whether the evidence submitted at trial preponderates in favor of a finding that there was a danger that [the child] would suffer severe emotional harm from the severance of her relationship with [the g]randparents"). Only if the trial court correctly concluded that Grandparents had met their burden, will we go further to consider whether visitation is in the child's best interests. *See* Tenn. Code Ann. § 36-6-306(c).

The term "substantial harm" does not lend itself to easy definition. As explained by this Court in *Ray v. Ray*, 83 S.W.3d 726 (Tenn. Ct. App. 2001):

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Ray*, 83 S.W.3d at 732. Few cases have considered the substantial harm issue as applied to grandparent visitation in Tennessee. While there has been voluminous litigation regarding the Grandparent Visitation Statute, it appears that this case is one of the few cases in Tennessee to consider the issue of whether the petitioning grandparents have met their burden to show that substantial harm, or more specifically, "severe emotional harm," is likely to occur due to the cessation of the relationship. Instead, several recent cases have involved whether a cessation of the grandparent-grandchild relationship has occurred that would give petitioning grandparents the right to seek visitation pursuant to the Grandparent Visitation Statute. *See Uselton v. Walton*, No. M2012-02333-COA-R3-CV, 2013 WL 3227608 (Tenn. Ct. App. June 21, 2013) (Highers, J., dissenting) (holding that the Grandparent Visitation Statute was not implicated because there was no cessation of visitation); *Green v. Evans*, No. M2011-00276-COA-R3-CV, 2012 WL 1107887, at *10 (Tenn. Ct. App. March 30, 2012) (same); *Huls v. Alford*, No. M2008-00408-COA-R3-CV, 2008 WL 4682219, at *7–8 (Tenn. Ct. App. Oct. 22, 2008) (same); *Rogers v. Turner*, No. E2007-02233-COA-R3-CV, 2008 WL 4613562, at *6–7 (Tenn. Ct. App. Oct. 13, 2008)

-14-

(same). Other cases concerned whether the petitioners had standing to seek visitation pursuant to the Grandparent Visitation Statute. *See Spears v. Weatherall*, 385 S.W.3d 547, 549–51 (Tenn. Ct. App. 2012) (concluding that former step-father of child's biological mother had no standing under Grandparent Visitation Statute) ; *Lovlace v. Copley*, No. M2011-00170-COA-R3-CV, 2012 WL 368221, at \*6–7 (Tenn. Ct. App. Feb. 03, 2012) (perm. app. granted June 21, 2012) (concluding that biological father's adoptive parents had standing pursuant to Grandparent Visitation Statute); *In re B.E.D.*, No. W2003-02026-COA-R3-JV, 2004 WL 572342, at \*4 (Tenn. Ct. App. March 22, 2004) (concluding that child's biological sister had no standing pursuant to Grandparent Visitation Statute). Another case involved the presumption of harm created when the child resided in the home of the petitioning grandparent for one year prior to the cessation of the relationship. *See Carr v. McMillan*, No. M2007-00859-COA-R3-CV, 2008 WL 2078058, \*6–7 (Tenn. Ct. App. May 14, 2008) (perm. app. denied Dec. 8, 2008) (designated not for citation). At least one case has involved the recent amendment to the Grandparent Visitation Statute creating the presumption of substantial harm created by the death of one of the child's parents. *See Wadkins v. Wadkins*, No. M2012-00592-COA-R3-CV, 2012 WL 6571044, at \*7 (Tenn. Ct. App. Dec. 14, 2012) (designated not for citation). Still another case considered whether *res judicata* barred a petition for grandparent visitation after an intervening change in the law. *See Jackson v. Smith*, 387 S.W.3d 486, 491–95 (Tenn. 2012) (holding that an intervening change in the law did not alter the usual application of *res judicata* without some intervening change in circumstances).

The Court in *Ottinger v. Ottinger*, No. E2003-02893-COA-R3-CV, 2004 WL 1626253 (Tenn. Ct. App. July 21, 2004), applying a previous version of the statute,[6] did consider the substantial harm requirement. According to the Court, the grandparents testified that they believed the child would suffer substantial harm if visitation were not granted. The child's parents obviously disagreed. Thus, the grandparents employed an expert witness to substantiate their claim of substantial harm. The expert testified that he believed that there was danger of harm if a child's relationship with his or her grandparents was terminated. However, the expert admitted that he was testifying "in generalities as to all children who had lost a parent and did not get to visit with grandparents." The expert admitted he had not actually examined or even spoken with the child at issue in the case. The trial court found

---

[6] *Ottinger* occurred before the Grandparent Visitation Statute was amended to provide a presumption that substantial harm will occur due to the cessation of a relationship with the child's grandparents, if the child's parent is deceased and the petitioning grandparents are the parents of the deceased parent. *Ottinger*, 2004 WL 1626253, at \*5; *see also* 2010 Tenn. Laws Pub. Ch. 957 (H.B. 2700) (2010) (amending the Grandparent Visitation Statute to allow a presumption of substantial harm "if the child's parent is deceased and the grandparent seeking visitation is the parent of that deceased parent"). Accordingly, the grandparents in *Ottinger*, like Grandparents in this case, had the burden to show that substantial harm was likely to occur due to the cessation of the grandparent-grandchild relationship.

that the petitioning grandparents had proven substantial harm and ultimately awarded grandparent visitation. The Court of Appeals reversed, explaining:

> A finding of a presence of a danger of substantial harm to the Child based upon the evidence in this record is contrary to the preponderance of the evidence and does not meet the standard set out in Tenn. Code Ann. § 36-6-306 and the current case law. The statutory standard requires that the petitioner prove a danger of substantial harm to the specific child with whom visitation is sought, not just to children in general. To hold otherwise would result in a presumption that all children suffer substantial harm by the denial of grandparent visitation which would leave only a best interest of the child analysis to be made by the court. Such a presumption is what our Supreme Court held unconstitutional in *Hawk* and would be contrary to the requirements of Tenn. Code Ann. § 36-6-306. *Hawk*, 855 S.W.2d at 581.[The expert] candidly admitted that his testimony dealt with "generalities" about what, in his professional opinion, "is in the best interest of the children in general." In short, [the expert] admitted that he could not give a "specific opinion directed at the [c]hild", and he did not do so.
>
> [Petitioning grandparents] failed to prove a danger of substantial harm to the particular child with whom visitation is sought. There is no evidence in the record to support a finding of "a real hazard or danger that is not minor, trivial, or insignificant" to the [c]hild should visitation with [petitioning grandparents] be denied. *Ray*, 83 S.W.3d at 732. Nor is there any evidence to support a finding that harm is "sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not." *Id.*
>
> The Trial Court engaged in the type of presumptive analysis that our Supreme Court sought to avoid with the *Hawk* decision. *Hawk*, 855 S.W.2d at 581. The Trial Court stated that [the expert] simply told them what everybody knows, i.e., that it is important for a child to know his grandparents. The Trial Court also noted that it attempts to facilitate family relationships, short of someone being an ax murderer or a drug dealer. The Trial Court clearly was considering what would be in the best interest of the [c]hild. However, [petitioning grandparents] failed first to make a showing of a danger of

substantial harm to the [c]hild sufficient to meet the threshold requirement. Without such a showing, the best interest test never should have been reached. The initial question is not whether [the parent's] decision concerning the [c]hild's visitation or lack of visitation with [petitioning grandparents] is wise or unwise or even whether it is in the best interest of the [c]hild, but instead is whether the decision creates a danger of substantial harm to the [c]hild. Certainly in grandparent visitation cases such as this one, "neither the legislature nor a court may properly intervene in parenting decisions absent significant harm to the child from those decisions." *Id.* Subject to the limitations of Tenn. Code Ann. § 36-6-306, a parent is free to decide that his or her child will not have contact or visitation with the grandparents. Absent the grandparents being able to satisfy the requirements of Tenn. Code Ann. § 36-6-306, the courts may not intervene with this decision by the parent.

*Ottinger*, 2004 WL 1626253, at *5. Thus, "[t]o find substantial harm, there must be supporting evidence in the record that is specific to this child's relationship with this grandparent." *Green v. Evans*, 2012 WL 1107887, at *10; *see also* *Hale v. Culpepper*, No. M2002-01955-COA-R3-CV, 2003 WL 22994294, at *6–7 (Tenn. Ct. App. Dec. 22, 2003) (reversing a finding of substantial harm when the only evidence in the record concerning the specific child at issue, the testimony of a psychologist, tended to show that no harm would come to the child due to the cessation of the grandparent-grandchild relationship).

In another recent case, *Angel v. Nixon*, No. M2010-00554-COA-R3-CV, 2010 WL 4483915 (Tenn. Ct. App. Nov. 08, 2010), this Court applied the rule set out in *Ottinger* to affirm the trial court's finding that the child was likely to suffer substantial harm. In *Angel*, unlike in *Ottinger*, the petitioning grandparents introduced evidence regarding the particular child's emotional state after the cessation of the grandparent-grandchild relationship to support their argument that the child was likely harmed by the cessation of the grandparent-grandchild relationship. *Id.* at *4. Specifically, this Court stated:

The evidence reflect[ed], and the [trial] court found, that although the child was generally healthy and happy, the separation from [g]randmother for 10 months during the pendency of the litigation had already begun to have negative effects-the child referred to his grandmother as "mean," and did not "warm up to her" during the supervised visits [that were ordered after the cessation of the relationship], while he

-17-

previously had a warm and loving relationship with her. The court also found that a reasonable person would find it likely that the separation would cause severe emotional harm for the child in the future, creating feelings of abandonment and depriving him of his right to learn about his heritage and the people who love him and cared for him when he was young. Last, the court found that if the child, when he was older, decided to pursue a relationship with [g]randmother, [m]other's resentment and anger towards [grandmother] would force the child to be deceptive. Although these findings may also be true for children in general, the court clearly found them to be true for this particular child, meeting the requirement in ***Ottinger***, 2004 WL 1626253, at *5.

***Angel***, 2010 WL 4483915 at *4. The Court of Appeals concluded that this evidence, which was specific to the child at issue in the case, was sufficient to show that the loss of the grandparent-grandchild relationship was likely to cause substantial harm to the child. ***Id.***

Decisions by our sister states can also offer guidance on the substantial harm issue. For example, in ***Mizrahi v. Cannon***, 375 N.J.Super. 221, 867 A.2d 490 (N.J. Super. A.D. 2005), the Superior Court of New Jersey explained that:

[G]randparents seeking visitation [under New Jersey's grandparent visitation statute] . . . must establish that denying visitation would wreak a particular identifiable harm, specific to the child, to justify interference with a parent's fundamental due process right to raise a child free from judicial interference and supervision. Conclusory, generic items, such as "loss of potentially happy memories," are not a sufficient basis to warrant such an intrusion into a parent's decision making.

***Mizrahi***, 867 A.2d at 498. Although New Jersey's grandparent visitation statute does not contain a harm component, the New Jersey Supreme Court has construed the statute to require a threshold showing that "denial of the visitation [the grandparents] seek would result in harm to the child." ***Id.*** at 496 (citing ***Moriarty v. Bradt***, 177 N.J. 84, 827 A.2d 203, (2003), *cert. denied*, 540 U.S. 1177, 124 S.Ct. 1408, 158 L. Ed.2d 78 (2004) ("[I]nterference with parental autonomy will be tolerated only to avoid harm to the health or welfare of a child.")). The Superior Court concluded that because there was no evidence of any harm likely to occur if visitation ceased, including feelings of "guilt or inadequacy," "confusion," a void in the child's life, "rejection," loss of the child's cultural heritage, or economic loss

due to the cessation of visitation, the grandparents failed to meet their burden to justify the grant of grandparent visitation. *Mizrahi*, 867 A.2d at 498.

Applying a statute that likewise requires petitioning grandparents to prove that the denial of visitation will create a substantial risk of harm, the Michigan Appellate Court in *Keenan v. Dawson*, 275 Mich. App. 671, 739 N.W.2d 681 (Mich. Ct. App.2007), upheld a grant of grandparent visitation. In *Keenan*, the child's maternal grandparents filed a petition for grandparent visitation after the death of their daughter, the child's mother. *Id.* at 683. The evidence showed that after the child's mother became involved with the child's father, she became alienated from her parents. *Id.* Although the maternal grandparents were allowed to visit the child while mother was alive, once mother died, father no longer allowed any visitation with the maternal grandparents. *Id.* To support their petition, the maternal grandparents hired a clinical psychologist, who opined that the child would benefit from the influence of maternal grandparents in his life. *Id.* at 684. Specifically, the psychologist testified that the child would likely have no memories of mother and that maternal grandparents would be best able to help the child "keep her memory alive." *Id.* The trial court utilized this testimony to find that the cessation of the child's relationship with maternal grandparents would be likely to cause the child substantial harm. *Id.* at 684–85. In affirming the trial court's finding, the Michigan Appellate Court stated:

> For sure, this was not merely a case where the trial court concluded that "grandparenting is good, therefore it should occur." Rather, the trial court found, on the basis of the testimony of [maternal grandparents' expert], that [the child] is and will be subject to emotional harm and turmoil in light of his mother's death. Additionally, both psychologists touched on the fact that a two-year-old child will have no lasting memory of persons in his or her life and, therefore, [the child] would have no memory of his mother . . . . The trial court's conclusion, that visitation with the maternal grandparents will help reduce the substantial risk of emotional harm and suffering that [the child] will experience as he grows older, was not clearly erroneous.
>
> Consequently, the trial court did not merely give "lip service" to the statutory presumption [that fit parent's decision will not be interfered with without a finding of substantial harm] when it ruled in favor of the [maternal grandparents]. It also did not merely second-guess [father's] decision because it thought grandparenting time was generally a good thing for children. Rather, after considering all the testimony about the harms that a young child can suffer when a parent dies and that part of the

-19-

family is "cut off" from the child, the trial court concluded that defendant's decision to deny [the child] time with his deceased mother's parents would cause substantial harm to [the child], given [the child's mother's] untimely death and the substantial likelihood that [the child] will have an inability to remember his mother. That decision, which was based on the evidence and in consideration of the presumption, did not improperly interfere with [father's] constitutional right to raise [the child] as he sees fit.

*Keenan*, 739 N.W.2d at 688. Because the maternal grandparents were able to show that the specific child at issue in the case would likely suffer substantial harm from losing his best chance at learning about his deceased mother, the Court affirmed the trial court's grant of visitation. Thus, the decisions in *Ottinger*, *Angel*, *Mizrahi*, and *Keenan* show that in order to affirm a trial court's finding of substantial harm, there must be affirmative evidence in the record showing that the specific child at issue is likely to suffer substantial harm from the loss of the grandparent-grandchild relationship.

We also recognize that in addition to the substantial harm component, discussed above, the Grandparent Visitation Statute also contains a requirement that the child be likely to suffer "severe emotional harm" as a result of the loss of the significant existing relationship with the petitioning grandparents. *See* Tenn. Code Ann. § 36-6-306(b)(1)(A). The phrase "severe emotional harm" is not defined in the statute, nor has it been defined by Tennessee Courts in the context of grandparent visitation. In interpreting the meaning of a word or phrase in a statute, the court may use dictionary definitions. *State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010) (quoting *State v. Williams*, 690 S.W.2d 517, 529 (Tenn. 1985)); *see also* 82 C.J.S. Statutes § 415 ("If the statute does not sufficiently define a word used therein, the court may consider all known definitions of the word, including dictionary definitions, in order to determine the plain and ordinary meaning of the word.") (footnotes omitted). Black's Law Dictionary defines "severe" as "[s]harp, grave, distressing, violent, extreme, . . . rigorous, [and] difficult to be endured." Black's Law Dictionary 1233 (5th ed. 1979). We, like the Court in *Ray*, decline to assign the phrase "severe emotional harm" an exact definition for purposes of the Grandparent Visitation Statute. Like the "substantial harm" requirement, "severe emotional harm" is "not amenable to precise definition because of the variability of human conduct." *Ray*, 83 S.W.3d at 732. However, we find instructive other Tennessee cases using this language as an indication of the high burden placed on litigants who are required to prove "severe emotional harm."

For example, Tennessee Courts often use the phrase "severe emotional harm" in the context of emotional distress cases. Recently in *Marla H. v. Knox County*, 361 S.W.3d 518

(Tenn. Ct. App. 2011), this Court defined "serious or severe emotional harm" as harm "that occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Marla*, 361 S.W.3d at 529 (internal quotation omitted) (citing *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996)). Some commentators have criticized this definition for being too narrow and preventing otherwise valid emotional distress claims:

> Over the long run, most people can "cope" with almost anything. They may need therapy, they may need medication, they may need both, but they can "cope." Certainly the Court meant to permit recovery in cases where a person sought counseling or received medication, particularly if the counseling or medication was received over an extended period.

John A. Day, *A Primer on the Law of Negligent Infliction of Emotional Distress*, Tenn. B.J., May 2005, at 28 n.5. However, our Supreme Court has noted that Tennessee is "one of thirteen states currently using this definition." *Eskin v. Bartee*, 262 S.W.3d 727, 735 n.12 (Tenn. 2008). This definition is also consistent with leading treatises on the subject, as well as the Restatement (Second) of Torts. *See* 2 Stein on Personal Injury Damages § 10:13 (3d ed.) ("[T]he Restatement contemplates an objective standard that looks to whether a reasonable or average person would experience severe distress under the circumstances. The test that has emerged is that distress is sufficiently severe "if no reasonable person could be expected to endure it[.]") (citing Restatement (Second) of Torts § 46). According to the Restatement, severe emotional harm can include "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." Restatement (Second) of Torts § 46. However, not all emotional injuries rise to the level of "severe emotional" distress:

> Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.

*Id.*

The above sources emphasize the lofty burden placed on litigants who are required to prove "severe emotional harm" as a *prima facie* element of their case. While we do not

hold that a petitioning grandparent must prove that the child is likely to suffer harm that no reasonable child could endure for purposes of grandparent visitation, the above language emphasizes the exacting burden implied by the General Assembly's decision to use this language in the Grandparent Visitation Statute. Indeed, the burden placed on petitioning grandparents is arguably even more important in the context of grandparent visitation, where the "severe emotional harm" component is the threshold requirement to ensure that the parent's constitutional rights are protected. *See Hawk*, 855 S.W.2d at 581. In any case, we need not precisely define the exact circumstances in which a court may find a likelihood of "severe emotional harm," as we conclude that Grandparents in this case have failed to submit evidence to support a finding that the child is likely to suffer substantial harm or any other harm that could reasonably be categorized as severe, grave, distressing, or extreme. *See* Black's Law Dictionary at 1233.

Turning to the record in this case, we conclude that Grandparents have failed to meet their burden to prove that either "substantial harm" or "severe emotional harm" is likely to occur as a result of the cessation of visitation. Without a showing of either "substantial harm" or "severe emotional harm," Grandparents have not met their burden to justify intrusion into Appellants' decision to terminate visitation; therefore, the trial court erred in allowing grandparent visitation. *See Hawk*, 855 S.W.2d at 581; Tenn. Code Ann. § 36-6-306(b)(1).

Grandparents first point to testimony from the child's maternal grandmother that she believed that the child would likely suffer substantial harm if her relationship with the child was severed. Clearly, maternal grandmother's opinion as to harm that might occur if her own relationship with the child were severed is not relevant to the cessation of the relationship between the child and Grandparents. As previously stated, the evidence regarding substantial harm must be " specific to this child's relationship with **this** grandparent." *Green v. Evans*, 2012 WL 1107887, at *10 (emphasis added). Hypothetical evidence of the child's reaction to the cessation of a relationship with another grandparent undoubtedly fails to meet this standard.

Essentially, there are only two instances regarding this child, supported by evidence in the record, that Grandparents use to support their harm argument. First, Grandparents point to the testimony of a witness to a number of exchanges between Grandparents and Appellants, prior to the cessation of visitation. This witness testified that on numerous occasions the child cried when Grandparents returned the child to Appellants and indicated that he did not want to leave Grandparents' care. Next, another witness testified that she saw Mother and the child at a retail store after the cessation of visitation. When the witness asked the child about Grandparents, the child became excited and repeated the name "Nana," which is how the child refers to Ms. McGarity.

In contrast, Mother testified that the child had never mentioned Grandparents once visitation was terminated and that he exhibited no signs of harm. Further, Mother asserts that the child would instead be harmed by continued visitation because it would force the child to confront the fact that his adoptive step-father is not his biological father and may lead to the revelation that the child's biological father voluntarily allowed his rights to be terminated.

We conclude that this evidence was insufficient to meet Grandparents' significant burden to show that the child would suffer either substantial harm or severe emotional harm as a result of the loss of the relationship with Grandparents. Unlike in *Angel*, there was no evidence in the record that the child at issue, who was only three years old at the time of trial, suffered any ill effects due to the cessation of the grandparent-grandchild relationship. While the child's negative reaction to the petitioning grandparent in *Angel* allowed the court to conclude that the child would suffer feelings of abandonment at the loss of the relationship, no such evidence exists in this case. The single incident where the child excitedly repeated the name Nana after Grandparents were mentioned to him fails to rise to the level of substantial harm contemplated by the Grandparent Visitation Statute. Although the trial court cited this incident as evidence "of the child's memory, recall, and emotional connection to his Nana, who is [Mrs. McGarity,]" as previously stated, a significant relationship or emotional connection with a petitioning grandparent does not, *ipso facto*, lead to the conclusion that the child will be harmed by the loss of the relationship. Instead, the evidence shows only that the child became excited at the mention of Grandparents, not that he became inconsolable, or otherwise upset, due to the loss of connection with them. Feelings of excitement do not rise to the level of other emotions that are customarily associated with findings of severe emotional harm, such as "grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, [or] nausea." *See* Restatement (Second) of Torts § 46. In addition, nothing in the record persuades us that the child's reactions when being exchanged are evidence that the child will suffer substantial harm if visitation is not granted. Much like in *Mizrahi*, there is simply no evidence in the record to support a finding that the child will likely feel inadequate, abandoned, rejected, that he will lose connection with his heritage, or that he will suffer economically, if visitation is not granted. In addition, the evidence in this case is not analogous to the situation presented in *Keenan*. In *Keenan*, the child's mother tragically died, and the Michigan Court of Appeals concluded that substantial harm would come to the child if the child was unable to "keep [his mother's] memory alive." The court, therefore, ordered visitation with the maternal grandparents for that purpose. In contrast, in this case, the child's biological father voluntarily relinquished his parental rights to the child and Mr. Jerrolds has assumed the role of the child's father. Accordingly, we cannot conclude, as the court did in *Keenan*, that the child in this case will be substantially harmed by failing to maintain any relationship or memory of his biological father. Thus, Grandparents have not shown that the cessation of visitation is likely to cause any substantial harm to the child. Instead, we must agree with Appellants that the only evidence in the record regarding the risk

of substantial harm or severe emotional harm is in Appellants' favor: that the child became confused and upset by the visitation and that the child may learn that his biological father voluntarily relinquished his rights to him when he is cognitively unable to understand. Under these circumstances, we conclude that the evidence preponderates against the trial court's finding that Grandparents met their burden to show that the child will likely suffer substantial harm or severe emotional harm as a result of the loss of the relationship. Without a finding of severe emotional harm, Grandparent's have failed to prove the threshold requirement of substantial harm. Without a showing of substantial harm, the trial court erred in granting grandparent visitation. The trial court's ruling granting visitation to Grandparents is, therefore, reversed.

### III. Conclusion

Based on the foregoing, the judgment of the Chancery Court of Hardin County is affirmed in part, reversed in part, and remanded for all further proceedings as are necessary and are consistent with this opinion. Costs of this appeal are taxed one-half to Appellants, Corbin Jerrolds and Amber Jerrolds, and one-half to Appellees Richard McGarity and Teresa McGarity, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE