# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 9, 2016 Session

## SVEN HADJOPOULOS, ET AL. v. ALEXANDRA SPONCIA, ET AL.

### Appeal from the Chancery Court for Greene County
No. 20140274     Douglas T. Jenkins, Chancellor

---

### No. E2015-00793-COA-R3-CV-FILED-APRIL 28, 2016

---

This is a grandparent visitation case.  Sven Hadjopoulos ("Grandfather") and Mary Lou Hadjopoulos ("Grandmother") ("Grandparents," collectively) filed a petition seeking visitation with their minor granddaughter ("the Child").  Alexandra Sponcia ("Mother") and Christopher Sponcia ("Father") ("Parents," collectively) opposed the petition and the requested visitation.[1]  After a trial, the Chancery Court for Greene County ("the Trial Court") found that substantial harm likely would come to the Child should visitation with Grandparents cease.  The Trial Court, therefore, ordered grandparent visitation.  Parents filed an appeal to this Court.  We hold that the Trial Court's final judgment is insufficient in a number of ways detailed herein, including its lack of a required best interest determination.  We vacate the judgment of the Trial Court and remand for the Trial Court to enter a new, clarified final judgment in this case consistent with this Opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

E. Ronald Chesnut, Greeneville, Tennessee, for the appellants, Alexandra Sponcia and Christopher Sponcia.

Joseph O. McAfee, Greeneville, Tennessee, for the appellees, Sven Hadjopoulos and Mary Lou Hadjopoulos.

---

[1] Brandon Babb is the biological father of the Child.  Christopher Sponcia married Mother and adopted the Child.  Babb consented to the adoption.  Sponcia was substituted for Babb as a party in this case.

# OPINION

## Background

The Child was born in December 2006. Mother was an unmarried teen at the time. Grandparents are the Child's maternal grandparents. The Child spent some amount of time with Grandparents in her early years. This amount of time was disputed at trial and on appeal. Grandparents assert that the Child stayed with them for a significant amount of time. Parents, on the other hand, assert that Grandparents kept the Child while Mother was working or in school, but never for a substantial amount of time.

This case has its roots in Parents' decision to stop grandparent visitation with the Child. Grandparents subsequently filed a petition for grandparent visitation in the Juvenile Court for Greene County, a petition which later was transferred to the Trial Court. Grandparents alleged, among other things, that they were responsible for the Child for a significant portion of the time from day to day, and that cessation of the relationship would pose a great likelihood of substantial harm to the Child. By agreed order in February 2014, grandparent visitation was ordered. Grandparents later filed a motion for contempt against Mother alleging that she refused to follow the visitation schedule set forth in the agreed order. The Juvenile Court found that Parents should have continued to follow the agreed order but had not done so. The matter was transferred to the Trial Court. This case was tried in December 2014.

Much of the trial testimony centered on the acrimonious relationship between Mother and Grandparents rather than on the Child's welfare, or what, if any, harm likely would come to the Child should grandparent visitation cease. Mother's brother testified that the Child had resided with Grandparents much of the time, but he could not specify exactly how much of the time. Grandfather testified that the Child stayed with Grandparents "half the time." Grandmother, for her part, testified it was ninety percent of the time. Certain witnesses for Parents, including one of the Child's teachers, testified to the Child being quite happy and well-adjusted. Mother herself testified that there was no risk of substantial harm to the Child as a result of the cessation of grandparent visitation.

In April 2015, the Trial Court entered its final judgment. The Trial Court's judgment consisted primarily and substantively of its oral ruling, a transcript of which was attached to the judgment. The Trial Court found as follows, in relevant part:

> [T]he Court finds and Rules as follows. There is a, of course, [the Child] . . . born in 2006. The first - - I think the testimony from both sides was probably five or six years of the child's life he (sic) lived in the

-2-

grandparents' - - who are seeking visitation - - household most of the time. And they took a big part in caring for him (sic) and taking care of him (sic), and were probably more than grandparents to him, and had a wonderful and great relationship with him (sic). In March of 2013, sometime before the filing of this action, the mother attempted to severe [sic] the child's relationship with her mother in particular, and then this Petition For Grand Parental Rights was filed. The lawyers brought me some cases to look at, and the McGarity case is really the case that gave the Court pause when we were doing the trial because Judge - - I think it was Judge Stafford wrote the Opinion - - and that case, if you just - - at first blush it looks like it sets up an insurmountable burden of proof for grandparents in connection with seeking the right to visit their grandchildren. But the Court believes in this particular case, that this particular case has some rather peculiar facts that are somewhat different than McGarity. And the Court believes that the attempted severance of the grandparents' relationship with the child was not in good faith and that it was done kind of on a whim, or after some heated words, or maybe a series of heated exchanges between Mom and Grand Mom. And whatever problems you all have got between yourselves, the child - - all the testimony was that the child was very attached to the grandparents and had spent a whole lot of time with them. The Court believes that their relationship with the child should continue, but no[t] so as to be intrusive into your life, not so as to - - and I'm talking to you, Mom - - not so as to interfere with you[r] relationship, just to continue the relationship with the grandparents so the child doesn't have issues with abandonment or anger because someone that was very important to them is just all of a sudden no longer there. And I know we've got this Interim Order where some visitation has been occurring, so the Court believes that to prevent substantial harm to the child, substantial emotional harm to the child that this relationship should continue. And the Court believes that there should be a minimum of two visitation sessions a month from 10:00 o'clock until 6:00 o'clock. At this time the Court doesn't feel as though overnight visits are necessary to keep up the grandparents' relationship with the child, but two times a month from 10:00 o'clock to 6:00 o'clock so as not to interfere with the child's extracurricular schedule. When the child gets older in its teen years and you want to afford a child more freedom, the Court would consider overnight visits, but what I've set out is a minimum. Okay? If you all start getting along better and you want to let the child go over there and spend a week, it doesn't matter to me if you all agree on it, but this Order that I'm putting down is just a minimum of grand parental visitation. And I'm not ordering any specific holiday visitation for you all, except I would say this: The child I think should be with its nuclear family

on holidays, but schedule one of your two days a month around a holiday, and you can have Christmas at that time, etcetera.

***

The Court heard from several witnesses, but I think the main two witnesses the Court heard from - - or the main three witnesses - - were the Parties themselves; the grandparents on the one hand and then the mother on the other hand. And the Court credits the testimony of the grandparents and the mother's brother that testified and finds that it's - - in the quantum of credibility it is the testimony that I've credited in making my decision.

***

I just think that the - - I don't see a rational basis really for terminating - calling off, and I think it was in March of 2013 - - in terminating the child's relationship with the grandparents. Well, the first - - listen. That child's whole life, he'd (sic) been right there in their household, and there was a lot of testimony about how close he (sic) was to them. And with everything going on in the world right now, you know, a good influence from a grandparent is helpful. I think a child needs it, particularly in a case like this where they took a big part in raising the child the first five or six years of the child's life. So, you know, I'm not substituting my judgement for Mom's. I'm just looking at the facts and making what findings I have, and ruled accordingly.

The Trial Court reserved judgment on Grandparents' motion for contempt. The Trial Court specified that its judgment as to grandparent visitation was a final judgment. Parents timely appealed to this Court.

### Discussion

Although not stated exactly as such, Parents raise the following issue on appeal: whether the Trial Court erred in finding that there is a danger of substantial harm to the Child if the Child does not have visitation with Grandparents.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no

-4-

presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Tenn. Code Ann. § 36-6-306 (2014), the Grandparent Visitation Statute, provides in relevant part:

(a) Any of the following circumstances, when presented in a petition for grandparent visitation to the circuit, chancery, general sessions courts with domestic relations jurisdiction or juvenile court in matters involving children born out of wedlock of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents:

(1) The father or mother of an unmarried minor child is deceased;

(2) The child's father or mother are divorced, legally separated, or were never married to each other;

(3) The child's father or mother has been missing for not less than six (6) months;

(4) The court of another state has ordered grandparent visitation;

(5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent or parents (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or

(6) The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance of the relationship, this relationship was severed by the parent or parents for reasons other than abuse or presence of a danger of substantial harm to the child, and severance of this relationship is likely to occasion substantial emotional harm to the child.

(b)(1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child. Such finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:

(A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;

(B) The grandparent functioned as a primary caregiver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

(C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

\*\*\*

(3) A grandparent is not required to present the testimony or affidavit of an expert witness in order to establish a significant existing relationship with a grandchild or that the loss of the relationship is likely to occasion severe emotional harm to the child. Instead, the court shall consider whether the facts of the particular case would lead a reasonable person to believe that there is a significant existing relationship between the grandparent and grandchild or that the loss of the relationship is likely to occasion severe emotional harm to the child.

\*\*\*

(c) Upon an initial finding of danger of substantial harm to the child, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, reasonable visitation may be ordered.

Our review of the record on appeal convinces us that the dispositive issue is not that raised by Parents, but rather whether the Trial Court's order is sufficient for this Court to conduct an effective appellate review. We find that it is not.

Tenn. Code Ann. § 36-6-306(a) lays out the circumstances necessitating a hearing when parents oppose grandparent visitation. In the present case, it is undisputed by Parents that the Child had a prior significant existing relationship with Grandparents. Parents also do not dispute Grandparents' standing. Therefore, ostensibly, the enumerated circumstances in Tenn. Code Ann. § 36-6-306(a) are not at issue. However, both at trial, and on appeal, Grandparents assert that both circumstances (5) and (6) apply

to them. The significance of this is that under subsection (5), where "[t]he child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent or parents," there is a "rebuttable presumption that denial of visitation may result in irreparable harm to the child." If subsection (5) were found to be applicable, the burden would shift from Grandparents to Parents. *See Larson v. Halliburton*, M2003-02103-COA-R3-CV, 2005 WL 2493478, at *5 (Tenn. Ct. App. Oct. 7, 2005), *no appl. perm. appeal filed*. The Trial Court did not state in its final judgment which subsection it applied. The difference in whether subsections (5) or (6) apply, or both, potentially is dispositive to the outcome in this case. Without a specific holding on this part by the Trial Court, when both subsections were tried and argued, we are left to guess or assume in order to conduct appellate review. We decline to do so. The judgment of the Trial Court instead is vacated, and this case is remanded to the Trial Court to enter a new, clarified final judgment.

Additionally, the Trial Court's findings regarding substantial harm or severe emotional harm to the Child are too generalized to allow sufficient appellate review. The Trial Court at one point spoke to a general sense that in today's world, a good influence from a grandparent is helpful. While this may be true, depending in part upon the applicability of the rebuttable presumption discussed above, a particularized finding is required as to each specific case as to why cessation of grandparent visitation *in that particular case* likely would occasion substantial harm or severe emotional harm to the child. *See McGarity v. Jerrolds*, 429 S.W.3d 562, 580 (Tenn. Ct. App. 2013). Finally, on this issue of the substantial harm threshold, there was some discussion during the Trial Court's oral ruling as to the standard of evidence being that of clear and convincing evidence. This Court has reviewed the case law on grandparent visitation, and is unsure where the Trial Court and counsel came to understand that the evidentiary burden in grandparent visitation cases is that of clear and convincing evidence. Our research indicates the standard is the usual one for civil cases, that of a preponderance of the evidence.

An additional deficiency in the final judgment exists. Tenn. Code Ann. § 36-6-306(c) requires that, upon a finding of a danger of substantial harm to the child, the court is to render a best interest determination based upon the factors contained in Tenn. Code Ann. § 36-6-307. Only after making a determination according to the statutory factors that grandparent visitation is in the child's best interest may a court then proceed to order reasonable visitation. In the present case, the Trial Court's final judgment contains no such analysis as to the Child's best interest. On remand, should the Trial Court again find a danger of substantial harm or severe emotional harm, it then must conduct a best interest analysis pursuant to Tenn. Code Ann. § 36-6-306(c) and Tenn. Code Ann. § 36-6-307. Only if the Trial Court finds that grandparent visitation is in the

best interest of the Child may the Trial Court then order reasonable grandparent visitation.

While this Court much prefers to resolve appeals on their merits, we see no alternative in the present case but to vacate and remand with instructions for the Trial Court to enter a new final judgment. Specifically, the Trial Court is instructed to enter a new final judgment containing the following: (1) a finding as to whether Tenn. Code Ann. § 36-6-306(a)(5) or (6), or both, applies to this case, and, if subsection (5) applies, whether Parents successfully rebutted the rebuttable presumption of irreparable harm if grandparent visitation is disallowed; (2) depending in part upon the Trial Court's finding regarding instruction (1), a clarified finding of whether cessation of grandparent visitation will occasion substantial harm or severe emotional harm *in this specific case* and not to grandchildren in general; and, (3) if the danger of substantial harm threshold is met in the Trial Court's judgment, a best interest determination pursuant to Tenn. Code Ann. § 36-6-306(c) based upon the factors found at Tenn. Code Ann. § 36-6-307 before any reasonable grandparent visitation is ordered.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Trial Court for further action consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed equally against the Appellants, Alexandra Sponcia and Christopher Sponcia, and their surety, if any, and the Appellees, Sven Hadjopoulos and Mary Lou Hadjopoulos.

_____
D. MICHAEL SWINEY, CHIEF JUDGE