# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 9, 2016 Session

## MONICA CHAMBERLAIN v. MYRA DANIELLE BROWN

**Appeal from the Circuit Court for Greene County**
**No. 14CV465AEP     Douglas Jenkins, Chancellor Sitting By Interchange**

---

**No. E2015-01658-COA-R3-CV-FILED-DECEMBER 19, 2016**

---

Monica Chamberlain ("Grandmother") sued Myra Danielle Brown ("Mother") seeking to be awarded grandparent visitation with Mother's child Talan B. ("the Child") pursuant to Tenn. Code Ann. § 36-6-306.  After a trial, the Circuit Court for Greene County ("the Trial Court") entered its judgment awarding Grandmother visitation with the Child after finding and holding, *inter alia*, that Grandmother had proven that Mother had denied visitation, that Mother had failed to rebut the presumption that denial of visitation may result in irreparable harm to the Child, that Grandmother and the Child had a significant existing relationship, and that visitation was in the best interest of the Child.  Mother appeals to this Court.  We find and hold that the evidence does not preponderate against the Trial Court's findings, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and THOMAS R. FRIERSON, II, JJ., joined.

Curt Collins, Greeneville, Tennessee, for the appellant, Myra Danielle Brown.

Brent Hensley, Greeneville, Tennessee, for the appellee, Monica Chamberlain.

# OPINION

## Background

Grandmother is the paternal grandmother of the Child. When the Child was born, Mother, the Child's father, Devin B. ("Father"), and the Child lived with Grandmother. Mother, Father, and the Child lived with Grandmother for more than two and a half years. In August of 2011, Mother, Father, and the Child moved out of Grandmother's house.

Mother and Father were arrested in March of 2012. The Child was found to be dependent and neglected, and the Child's maternal grandparents were given custody of the Child. Grandmother intervened in that suit and was granted visitation with the Child. During the autumn of 2013, Mother regained custody of the Child. An order was entered, however, denying Father any contact with the Child.

In November of 2014, Grandmother filed the instant suit alleging, in part, that Mother had denied Grandmother visitation with the Child and that Grandmother was entitled to visitation pursuant to Tenn. Code Ann. § 36-6-306. The case was tried without a jury in June of 2015. The Child was almost six years old at the time of trial.

Grandmother testified that when the Child was born Mother, Father, and the Child lived with her. Grandmother stated: "I helped care for [the Child] and play with him and develop a realtionship with him. We bonded very closely." Grandmother stated that the Child and his parents lived with Plaintiff "[f]or over two and a half years." Grandmother testified that she would babysit and play with the Child. She admitted she never was the Child's sole caretaker.

Grandmother admitted that she knew that Father had issues with drugs, but stated that she was unaware that Mother also had issues until both Father and Mother were arrested. Grandmother explained that when Father and Mother were arrested, the Child's maternal grandmother took custody of the Child. Grandmother intervened in that suit, was granted visitation with the Child, and exercised her visitation regularly. During the time that the Child was in the custody of the maternal grandmother, Grandmother would have visits with the Child every other week for a twenty-four hour period.

In the autumn of 2013, Mother regained custody of the Child. Grandmother stated that Mother "allowed me to see [the Child] for a few times [after Mother regained custody], and then it stopped." Grandmother testified that she was unable to contact Mother because Mother's phone number had changed. Grandmother explained that when she was able to have visits with the Child, she set up the visits by texting Mother. Grandmother also attempted to text the Child's maternal grandmother, but received no

reply.  Grandmother then filed the instant suit.  Grandmother testified that she is requesting one weekend a month visitation with the Child.

Grandmother stated that initially the judge asked the parties to try to work things out.  Grandmother stated:

> Again, [Mother] allowed me to see him a couple of times, the first time at McDonald's, and it was supervised because [Mother] and her sister were there.  It had been about five months since I had seen [the Child], and when he saw me, he ran to me and latched on and, you know, cried, "Mamaw, where have you been?  I've missed you so much."  It is very difficult not to be able to see him.

Grandmother also stated:

> And then as we were sitting there and playing, and [Mother] and her sister were sitting in the booth next to us, he said, "Mamaw, can I come live with you?"  Of course, I wanted to say yes, but I said, "Well, wouldn't you miss your mom?", and he said, "Well, can't she come, too"?

The last time Grandmother saw the Child was approximately one year before trial. Grandmother testified that since that time she has tried calling and texting Mother but has received no response.  Grandmother also tried texting the Child's maternal grandmother but again received no response.

Grandmother was unsure where her son, Father, was residing at the time of trial. She stated that the last place she knew of was at Greeneville Terrace where he had been living with his girlfriend.  Grandmother testified that her son has not lived with her for more than a year.  She stated "there has been time when he has stayed a night or two, but he does not - - has not lived in my home for quite some time."  When asked if Father ever just showed up at her house, Grandmother stated: "No."  She further stated:

> He did once, asked if he could stay the night, and I told him yes.  I didn't have any kids in the home.  I didn't have - - there was no reason other than him just not having a place to sleep that night that I allowed him to.  But I am in complete agreement that he does not need to see nor does he deserve to see [the Child].

Grandmother was questioned about a text she sent to Mother asking when Father could see the Child, and Grandmother stated:

I think that was more in reference to when would he ever be allowed to see im [sic] again, not can he see him right away. I knew [Father] had drug issues for some time, and I am completely in agreement that he does not need to nor deserve to see him because of his own choices.

With regard to this text, Grandmother further stated:

You know, it's a mother's hope that her son will do better and be better. . . . I mean it was a question to her of at some point is he ever going to be able to see his son, and that wouldn't have been, oh, just on a whim. It would have been through the Court. You know, I would have done things properly, but it's a mother's hope that her son will be better and be able to see his son.

When asked if she could understand how such a text might cause Mother concern, Grandmother stated:

Well, yeah, sure. I can - - you know, hindsight is 20-20, but, you know, it - - when your son is in tears because he can't see his own son. Well, like I said, it's a mother's hope that her son will do better and be better, but he's proven otherwise. I'm in complete agreement with that he does not need to see him.

Grandmother testified that the Child never saw Father when the Child was with Grandmother. Grandmother acknowledged that there was a no contact order prohibiting Father from having any contact with the Child. She stated: "There was one time I had - - I had told him I was going to get [the Child], and when I got home, he was there. Now [the Child] did not see him, but I said, 'You need to leave,' and I thought he had left." This incident happened approximately a year and a half before trial. Grandmother explained further stating:

[Father] was home at that point, and I had [the Child] on my shoulder. I had a blanket over him. I don't know if it was cold or rainy or whatever it was, but when I saw him, I said, "You can't be here. You've got to go." . . . Well, he went down the steps. I have a split foyer. So he went down the stairs through the basement. I thought he left, and [the Child] absolutely never saw him.

Grandmother testified that she resides with her fiance and her younger son. Grandmother's younger son drives a truck, but is at home "a couple" of nights a week. Grandmother was asked about her home, and she stated:

4

Just a three-bedroom ranch home in a neighbor - - you know, in a pretty quiet, decent neighborhood. . . . And my home has been checked out by state foster care people and the foster care folks who I have been associated with that oversees my foster parenting. I'm not fostering now, but when I was, they would have to do home studies and home checks, and there have never been any issues.

Grandmother testified that she works at SteppenStone Youth Treatment Services where she works with the Department of Children's Services on getting sex offending children in the system in for treatment.

With regard to whether Mother ever denied her visitation, Grandmother stated: "There's no verbal, no text, no anything like that, but when they kind of stopped contacting you, it's - - to me, it was obvious they didn't want me to see him." Grandmother testified that she texted the Child's maternal grandmother one time to tell her that she had some of Mother's mail from the court, but no one responded. Grandmother stated that she still has that piece of mail addressed to Mother.

Mother testified that she lives with her fiance and her two children, the older of which is the Child. Mother explained that her parents got custody of the Child in April of 2012, and Mother regained full custody of the Child in August of 2013. After she regained custody of the Child, Mother allowed Grandmother to see the Child once.

Mother was asked if she had issues with the Child's visitation with Grandmother, and she stated:

There was - - on two different occasions where I picked him up at Walmart and he was either not in his car seat or he wasn't buckled into his car seat. He was also not bathed and very whiny. He looked like he didn't have - - like he hadn't had a nap. And at home his behavior after coming back from her house was, was very bad. I had to - - it took, you know, a few days to get him back in - - you know, to mind. . . . He is in kindergarten. So behavior is a big part of school and parenting. So when he would have to come - - he was in preschool at the time. So when he would come back, you know, his attitude towards me was very different. It was almost like he got to do whatever he want. He didn't get his way, you know, with me all the time. It was like he just come back just unruly.

Mother testified that despite this, she did not deny Grandmother visitation.  Mother did state, however, that she had problems with allowing the Child to stay overnight with Grandmother.  Mother explained:

> [O]ne of the biggest issues overnight is his father, [Father].  He might not be allowed to stay there, but he has came and gone, and him being in the house at the same time as [the Child] is - - was not supposed to be allowed.  I was not allowed to see him or have any kind of contact or even be near him, and his father wasn't either, and that was a big concern of mine as he could come in, and, you know, she couldn't stop him.

Mother testified that she also had other concerns, and she explained:

> At the time she told me she was taking care of the children at SteppenStone, and to my knowledge, they're not allowed to be around small children.  So that was a big concern of mine, of, you know, when - - he can't be there when these children are present.

Mother testified that Father has not been allowed any contact with the Child since March of 2012.  Mother stated that she had concerns about Father being around the Child, and she described an incident stating:

> When [Father] called me, he was very upset, crying . . . .  He was upset because he was in the basement, and he could hear [the Child] upstairs playing, and he wanted to see him, and obviously he couldn't, and he was just upset that he was there that close to him and couldn't see him.

Mother agreed that this telephone conversation occurred before Mother regained custody of the Child.

Mother admitted that Grandmother had given her no other reasons for concern about Father coming into contact with the Child.  Mother agreed, however, that she worried that Grandmother might allow Father to see the Child if Grandmother thought that Father was doing better.

Mother expressed concern over the text message from Grandmother asking when Father could see the Child.  Mother stated:

> [T]o my knowledge, the text message, it's not up to me and when I would let him - - you know, let her see him.  It was up to the Court, and he had to

6

follow, you know, all the rules and like go through all the hoops that I went through to [the Child]. It wasn't up to me.

Mother testified that she has had the same phone number since June of 2014, and that Grandmother had that number. Mother stated that the last time Grandmother saw the Child was in July of 2014, and that this visit was set up via text using Mother's current phone number. Mother testified that her phone number has not changed since that time. Mother was asked if Grandmother had contacted her since that time, and she stated: "I remember maybe once. I was pregnant at the time and working, and I may have forgot, but there was just one time that I remember. I don't remember getting any phone calls, no voice mails, just texts." Mother testified that the Child has not shown any confusion about why he hasn't seen Grandmother since the last visit.

After trial, the Trial Court entered its Final Judgment on August 27, 2015 granting Grandmother visitation with the Child after finding and holding, *inter alia*:

2. That T.C.A. § 36-6-306 is controlling in this matter and is the appropriate law to be applied in this matter as the same is a request for Grandparent's Visitation. That [Grandmother] is the paternal grandmother of the minor child and her son is divorced from [Mother], the mother of the minor child. [Mother] has primary parenting responsibility and the child's father is under a "no contact" order with the minor child, such that the father of the child enjoys no parenting time or visitation with the minor child.
3. That [Grandmother], [Mother] and [the maternal grandmother] testified and the Court finds all those who testified to be credible.
4. That in application of the statute to the testimony presented and the facts the Court finds to be relevant and applicable [Mother] has denied [Grandmother] visitation pursuant to T.C.A. § 36-6-306. That further the minor child resided with [Grandmother] as a nuclear family unit for about two and one-half (2 1/2) years such that T.C.A. § 36-6-306(a)(5) is applicable and the denial of visitation as between the minor child and [Grandmother] establishes a rebuttable presumption that the denial of visitation may result in irreparable harm to the child.
5. That further T.C.A. § 36-6-306(a)(6) is applicable and [Grandmother] and the minor child maintained a significant existing relationship for a period of twelve months or more immediately preceding the severence of the relationship and that the relationship was severed by [Mother] for reasons other than abuse or a presence of danger substantial harm [sic] and the severance of this relationship is likely to occasion substantial emotional harm to the minor child.

7

6. That further the facts set forth in T.C.A. § 36-6-306(b)(1)(A) and T.C.A. § 36-6-306(b)(1)(C) exist as to further justify grandparent visitation.

7. That with regard to the determination as to whether [Grandmother] and [the Child] had a significant existing relationship the Court finds that T.C.A. § 36-6-306(b)(2)(A), T.C.A. § 36-6-306(b)(B)(2) [sic] and T.C.A. § 36-6-306(b)(2)(C) all apply and are found to exist and establish that [Grandmother] and [the Child] are deemed to have had a significant existing relationship.

8. That as set forth in T.C.A. § 36-6-306(b)(3) [Grandmother] is not required to present the testimony or affidaivit [sic] of an expert witness but rather the Court shall consider whter [sic] the facts of this particular case would lead a reasonable person to believe that there is a significant existing relationship between the child and the grandparent or that the loss of the relationship is likely to occasion severe emotional harm to the child.

9. That in the instant matter the Court finds that application of the facts to the appropriate law as set forth above mandate that some grandparent visitation is appropriate.

10. That further the Court has considered those factors set forth in T.C.A. § 36-6-307 in ordering the amount of time to be awarded to [Grandmother].

Mother appeals the Trial Court's Final Judgment to this Court.

## Discussion

Although not stated exactly as such, Mother raises four issues on appeal: 1) whether the Trial Court erred in finding a rebuttable presumption that denial of visitation may result in irreparable harm to the Child; 2) whether the Trial Court erred in finding that the Child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child; 3) whether the Trial Court erred in finding that the relationship between Grandmother and the Child had been severed; and, 4) whether the Trial Court erred in finding that allowing Grandmother visitation would be in the best interest of the Child.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

As pertinent to the case now before us, Tenn. Code Ann. § 36-6-306 ("the Grandparent Visitation Statute") provides:

(a) Any of the following circumstances, when presented in a petition for grandparent visitation to the circuit, chancery, general sessions courts with domestic relations jurisdiction or juvenile court in matters involving children born out of wedlock of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents:

* * *

(5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent or parents (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or

(6) The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance of the relationship, this relationship was severed by the parent or parents for reasons other than abuse or presence of a danger of substantial harm to the child, and severance of this relationship is likely to occasion substantial emotional harm to the child.

(b)(1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child. Such finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:

(A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;

(B) The grandparent functioned as a primary caregiver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

(C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

9

(2) For purposes of this section, a grandparent shall be deemed to have a significant existing relationship with a grandchild if:

> (A) The child resided with the grandparent for at least six (6) consecutive months;
> (B) The grandparent was a full-time caretaker of the child for a period of not less than six (6) consecutive months; or
> (C) The grandparent had frequent visitation with the child who is the subject of the suit for a period of not less than one (1) year.

(3) A grandparent is not required to present the testimony or affidavit of an expert witness in order to establish a significant existing relationship with a grandchild or that the loss of the relationship is likely to occasion severe emotional harm to the child. Instead, the court shall consider whether the facts of the particular case would lead a reasonable person to believe that there is a significant existing relationship between the grandparent and grandchild or that the loss of the relationship is likely to occasion severe emotional harm to the child.

\* \* \*

(c) Upon an initial finding of danger of substantial harm to the child, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, reasonable visitation may be ordered.

Tenn. Code Ann. § 36-6-306 (2014).

This Court discussed the Grandparent Vistiation Statute in *McGarity v. Jerrolds* stating:

> Because of the great deference that courts give to parental decisions, when the court addresses grandparent visitation rights, it must perform a lengthy and complex three-pronged analysis. First, the grandparent seeking the court's intervention must show that one of six situations exists pursuant to Tenn. Code Ann. § 36-6-306(a). Second, the court must determine whether there is a danger of substantial harm to the child if the child does not have visitation with the grandparent. The foregoing is based on three factors set out in Tenn. Code Ann. § 36-6-306(b)(1). In conjunction with this analysis, the court must also determine if the relationship between the child and grandparent is significant based on three more factors set out in Tenn. Code

Ann. § 36-6-306(b)(2). Third, if the court finds that there is danger of substantial harm if the child does not have visitation with the grandparent, it must decide whether the visitation would be in the child's best interest based on seven factors under Tenn. Code Ann. § 36-6-307.

*McGarity v. Jerrolds*, 429 S.W.3d 562, 572 (Tenn. Ct. App. 2013) (quoting Marlene Eskind Moses and Jessica J. Uitto, *The Current Status of Tennessee's Grandparent Visitation Law*, Tenn. B.J., Jan 2010, at 46, 24).

We first consider whether the Trial Court erred in finding a rebuttable presumption that denial of visitation may result in irreparable harm to the Child. The Trial Court found that Grandmother had proven that the Child had resided in her home for a period of more than twelve months and had subsequently been removed from her home by his parents. The evidence in the record on appeal does not preponderate against these findings. Pursuant to Tenn. Code Ann. §36-6-306(a)(5), these findings give rise to a rebuttable presumption that denial of visitation may result in irreparable harm to the Child.

Mother argues in her brief on appeal that the Trial Court erred in finding that this rebuttable presumption arose because Mother and Father also resided with Grandmother during that time period, and Grandmother was not the Child's primary caregiver. Mother, however, has cited us to no law which states that the grandparent in such a situation must be the primary or only caregiver of the child at issue, nor has our research revealed any such law.

Grandmother proved the two statutorily mandated criteria pursuant to Tenn. Code Ann. § 36-6-306, and thus, the presumption arose. The Trial Court found that Mother failed to rebut this presumption, and the record on appeal does not preponderate against this finding. We find no error in the Trial Court's determination that Grandmother was entitled to a rebuttable presumption that denial of visitation may result in irreparable harm to the Child and that this presumption was not rebutted.

We next consider whether the Trial Court erred in finding that the Child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child. The evidence in the record on appeal shows that the Child resided with Grandmother for more than six consecutive months and that Grandmother had frequent visitation with the Child for a period of not less than one year. Given these facts, we find no error in the Trial Court's determination that Grandmother and the Child had a significant existing relationship. The Trial Court also found that loss of that relationship is likely to occasion severe emotional harm to the Child. As discussed above, a rebuttable presumption that denial of visitation may result

11

in irreparable harm to the Child arose, and Mother failed to rebut that presumption. Furthermore, the evidence in the record on appeal does not preponderate against the Trial Court's finding that the loss of the Child's relationship with Grandmother is likely to occasion severe emotional harm to the Child. As the evidence does not preponderate against the Trial Court's findings relative to this issue, we find no error.

Next, we consider whether the Trial Court erred in finding that the relationship between Grandmother and the Child had been severed. The Trial Court found that "[Mother] has denied [Grandmother] visitation pursuant to T.C.A. § 36-6-306." The evidence in the record on appeal shows that while Mother never specifically stated that Grandmother could not have visitation, Mother denied Grandmother visitation by ignoring or avoiding the text messages sent by Grandmother, which previously had been used as the method for setting up visitation. The end result was that Grandmother was denied visitation. The evidence in the record on appeal does not preponderate against the Trial Court's finding that Mother denied Grandmother visitation.

Finally, we consider whether the Trial Court erred in finding that allowing Grandmother visitation would be in the best interest of the Child. After making a finding of danger of substantial harm to the child, a trial court then must consider the best interest of the child based upon the non-exclusive list of factors contained in Tenn. Code Ann. § 36-6-307, which provides:

> In determining the best interests of the child under § 36-6-306, the court shall consider all pertinent matters, including, but not necessarily limited to, the following:
>
> (1) The length and quality of the prior relationship between the child and the grandparent and the role performed by the grandparent;
> (2) The existing emotional ties of the child to the grandparent;
> (3) The preference of the child if the child is determined to be of sufficient maturity to express a preference;
> (4) The effect of hostility between the grandparent and the parent of the child manifested before the child, and the willingness of the grandparent, except in case of abuse, to encourage a close relationship between the child and the parent or parents, or guardian or guardians of the child;
> (5) The good faith of the grandparent in filing the petition;
> (6) If the parents are divorced or separated, the time-sharing arrangement that exists between the parents with respect to the child;
> (7) If one (1) parent is deceased or missing, the fact that the grandparents requesting visitation are the parents of the deceased or missing person;

(8) Any unreasonable deprivation of the grandparent's opportunity to visit with the child by the child's parents or guardian, including denying visitation of the minor child to the grandparent for a period exceeding ninety (90) days;

(9) Whether the grandparent is seeking to maintain a significant existing relationship with the child;

(10) Whether awarding grandparent visitation would interfere with the parent-child relatinship; and

(11) Any court finding that the child's parent or guardian is unfit.

Tenn. Code Ann. § 36-6-307 (2014).

The Trial Court considered the relevant factors contained in Tenn. Code Ann. § 36-6-307 when making its determination that visitation with Grandmother would be in the Child's best interest. The evidence in the record on appeal does not preponderate against the Trial Court's finding. As such, we find no error with regard to this issue.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Myra Danielle Brown, and her surety.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

13