FILED

04/23/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 19, 2019 Session

## DAVID B. STARKEY v. WELLS FARGO BANK, N.A.

**Appeal from the Chancery Court for Rutherford County**
**No. 13CV-26      Howard W. Wilson, Chancellor**

_____

### No. M2018-00049-COA-R3-CV

_____

After receiving notice of foreclosure proceedings, a homeowner filed suit against the bank challenging the bank's authority to foreclose, demanding verification of the debt, and asserting multiple causes of action against the bank. The bank counterclaimed for slander of title, breach of contract, and declaratory judgment and injunctive relief. In response to the bank's motion for summary judgment, the trial court determined that the bank was the holder in due course of the promissory note and the deed of trust and granted the bank summary judgment on all claims asserted by the homeowner and on the bank's claims for breach of contract and for declaratory and injunctive relief. The bank subsequently moved forward with a foreclosure sale and purchased the homeowner's property. The trial court then held two hearings on damages and awarded the bank a total of $194,554.23 in damages, which consists of the balance due on the loan, rent due after the foreclosure, and attorney fees and litigation expenses. On appeal, the homeowner raises numerous issues regarding the damages awarded to the bank. Finding no merit in the issues raised by the homeowner, we affirm the decision of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

David B. Starkey, Murfreesboro, Tennessee, pro se.

Jonathan Cole and Brittany Bartley Simpson, Nashville, Tennessee, for the appellee, Wells Fargo Bank, N.A.-California.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

David Starkey purchased real property on Lascassas Pike in Murfreesboro on June 7, 2007 for $350,000. To finance the purchase, Mr. Starkey obtained a loan from Wells Fargo Bank ("the Bank") in the amount of $280,000. The indebtedness was evidenced by a promissory note ("the Note") dated June 7, 2007, and was secured by a deed of trust recorded with the Rutherford County Register of Deeds on June 11, 2007, that expressly states: "THIS IS A PURCHASE MONEY SECURITY INSTRUMENT."

Following the execution of the Note and deed of trust, the Bank's Vice President, Joan M. Mills, endorsed the Note in blank. The Note and deed of trust were sold and negotiated by transfer of possession to Federal Home Loan Mortgage Company ("FHLMC") on August 1, 2007. The Bank remained the servicer of the loan. On June 25, 2013, FHLMC transferred and negotiated the Note and deed of trust back to the Bank.

Mr. Starkey stopped making payments on the loan in May 2012. On July 16, 2012, the Bank sent him a default notice informing him that the loan would be accelerated if he did not pay the entire delinquency by September 18, 2012. Also on July 16, 2012, the Bank sent Mr. Starkey a notice informing him that the Bank had the right to initiate foreclosure proceedings against him due to his default on the loan. When Mr. Starkey failed to bring the loan current, the Bank initiated foreclosure proceedings on the property. The Bank sent Mr. Starkey a letter on October 3, 2012, informing him that his loan had been referred to a foreclosure attorney and the foreclosure process had begun.

In an apparent effort to stop or interfere with the foreclosure proceedings, Mr. Starkey created a cloud on the title to the property by filing numerous documents with the Rutherford County Register of Deeds, including several UCC financing statements.[1] He then filed a complaint and two amended complaints challenging the Bank's authority to foreclose on the property and asking for verification of the debt and a declaratory judgment as to the holder in due course of the Note. He further alleged causes of action for lack of standing, fraud in the inducement, negligent misrepresentation, fraud in the

---

[1] Mr. Starkey filed the following documents with the Rutherford County Register of Deeds: Notice of Lien and UCC Financing Statement, November 1, 2012; Affidavit of Notice of Revocation of Power of Attorney and Termination of Attorney in Fact, December 17, 2012; Notice of Qualified Written Request, Complaint, Dispute of Debt and Validation of Debt Letter, TILA Request, December 17, 2012; second UCC Financing Statement, December 21, 2012; Affidavit of Forgery, December 21, 2012; Notice of Dispute, December 21, 2012; UCC Financing Statement Amendment, December 26, 2012; Notice of Trustee Obligations, December 26, 2012; three UCC Financing Statement Amendments, December 27, 2012; Notice of Rescission, January 2, 2013; Abstract of Lien Lis Pendens, January 8, 2013; Notice of Acceptance of Warranty Deed Certificate of Acknowledgment and Acceptance, August 23, 2013; Affidavit and Declaration, January 3, 2014; and Notice Security Agreement, December 15, 2014.

conveyance, and unjust enrichment. The Bank filed an answer, counter-complaint, and amended counter-complaint alleging various claims including slander of title, breach of contract, and a claim for declaratory relief.

On April 14, 2015, Mr. Starkey filed a motion for judgment on the pleadings, arguing that, pursuant to the Truth in Lending Act ("TILA"), he rescinded the loan when he sent the Bank a notice of rescission on December 31, 2012. The trial court denied Mr. Starkey's motion, finding that he sent the notice of the rescission outside the three-year statute of repose provided under TILA and that the loan was a purchase money security interest, which is an exempt transaction under TILA.

The Bank filed a motion for summary judgment on January 27, 2016. The trial court granted the motion, finding that the Bank was the holder in due course of the Note and deed of trust and that it had the right as the loan servicer to collect payments on the Note while it was owned by FHLMC. After the trial court granted summary judgment, the Bank moved forward with foreclosure proceedings. The foreclosure sale occurred on March 1, 2017, and the Bank purchased the property for $308,633.09.[2]

A hearing to determine the Bank's damages was scheduled for September 14, 2017. Three days before the hearing, Mr. Starkey filed a motion to appoint a court reporter for the hearing. On the day before the hearing, he filed a motion to vacate the memorandum and order granting summary judgment, arguing that the judgment was void due to the same TILA rescission argument he made in his motion for judgment on the pleadings.

During the damages hearing, Mr. Starkey made an oral motion to continue the hearing so a court reporter could be appointed and a motion to dismiss for lack of subject matter jurisdiction because the Note had been rescinded and declared void by the United States Supreme Court. The trial court denied the motion to vacate, the motion to continue, and the motion to dismiss. At the hearing, the Bank called one witness, Phillip Cargioli, a Bank loan analyst. During his testimony, the Bank introduced seven exhibits: (1) a Rule 1006 damages summary chart; (2) the Note; (3) the deed of trust; (4) bidding instructions; (5) the trustee's deed; (6) a Zillow.com estimate; and (7) the affidavit of Bank attorney Jonathan Cole. The court concluded that it needed additional information to determine attorney fees, so a second hearing was set for November 29, 2017.

At the second hearing, the Bank presented the affidavit of Jonathan Cole with additional detail to support its claim for attorney fees. The trial court concluded that the Bank should be awarded damages in the total amount of $194,554.23, based on "(1) $81,578.16 as the balance of the June 7, 2007 loan following foreclosure, (2) $8,925.00

---

[2]As of December 2015, Mr. Starkey owed $363,512.38 on the loan.

in total rent due since foreclosure, (3) attorneys' fees and litigation expenses of $104,051.07."

ISSUES ON APPEAL

On appeal, Mr. Starkey makes the following challenges to rulings made by the trial court during the damages hearings on September 14 and November 29, 2017:

(1) Whether the trial court erred in admitting into evidence the seven exhibits offered by the Bank at the September 14, 2017 hearing.

(2) Whether the trial court erred in admitting into evidence the testimony of the Bank's witness, Phillip Cargioli, at the September 14, 2017 hearing.

(3) Whether the trial court erred and violated Mr. Starkey's due process rights when it denied his motion to appoint a court reporter and his oral motion for a continuance of the September 14, 2017 hearing.

(4) Whether the trial court erred in denying Mr. Starkey's motions to dismiss for lack of subject matter jurisdiction and to vacate a void judgment.

(5) Whether the trial court erred in granting the Bank damages for rental payments pursuant to the deed of trust.

(6) Whether the trial court erred in failing to consider Mr. Starkey's attempt to tender payment.

(7) Whether the trial court erred in denying Mr. Starkey's request to question the Bank's witness on the issue of the Bank's status as a holder in due course of the Note.

ANALYSIS

We begin by noting that Mr. Starkey is a pro se litigant, both at trial and on appeal. This court applies the following standards when evaluating the claims of pro se litigants:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

- 4 -

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003). We allow pro se litigants some latitude in preparing their briefs and endeavor to "give effect to the substance, rather than the form or terminology," of their court filings. *Young*, 130 S.W.3d at 63.

I.  Evidentiary Issues.

   A.  Exhibits.

   Mr. Starkey asserts that the trial court erred in admitting exhibits 1 through 7 at the September 14, 2017 damages hearing.  We will consider each exhibit.

   The admissibility of evidence is within the trial court's sound discretion, and we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). Under an abuse of discretion standard, this court cannot substitute its judgment for that of the trial court. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). An abuse of discretion will be found only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Id.*

   (1) Exhibit 1:  Rule 1006 Damages Summary ("Damages Summary").

   The Bank's Damages Summary sets out key information concerning the loan between the Bank and Mr. Starkey, including the loan balance, attorney fees, and court costs.  Mr. Starkey argues that the document was not part of the Bank's business records, was created in anticipation of the hearing, was hearsay, and that he did not have the opportunity to review the underlying documents.

   In submitting the summary, the Bank relied upon Tenn. R. Evid. 1006, which provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals or duplicates shall be made available for examination or copying, or both, by other parties at reasonable times and places. The court may order that they be produced in court.

Under Tenn. R. Evid. 1006, "[t]he fact that the summary was created in anticipation of litigation does not disqualify it so long as the underlying data included in the summary

satisfies the business records exception." *Regions Bank, N.A. v. Williams*, No. W2013-00408-COA-R3-CV, 2014 WL 575889, at *4 (Tenn. Ct. App. Feb. 12, 2014).

Tennessee Rule of Evidence 803(6), which contains the business records exception to the hearsay rule, provides, in pertinent part:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

The business records exception requires documents to satisfy five criteria to qualify for introduction:

> 1. The document must be made at or near the time of the event recorded;
> 2. The person providing the information in the document must have firsthand knowledge of the recorded events or facts;
> 3. The person providing the information in the document must be under a business duty to record or transmit the information;
> 4. The business involved must have a regular practice of making such documents; and
> 5. The manner in which the information was provided or the document was prepared must not indicate that the document lacks trustworthiness.

*Alexander v. Inman*, 903 S.W.2d 686, 700 (Tenn. Ct. App. 1995). In the present case, the documents upon which the Damages Summary was based are the Note, the deed of trust, bidding notes, and the trustee's deed. Phillip Cargioli, a loan verification consultant for the Bank, testified:

> BS [Brittany Simpson, attorney for Bank]: . . . Mr. Cargioli, all the documents outside of the Wells Fargo or this affidavit and the Zillow printout, were they all kept in the regular course of business by Wells Fargo?
> PC [Phillip Cargioli]: Yes, and the, excluding the Damages Summary as well. Yes.
> . . . .
> BS: And do they [the documents] accurately reflect those records?

PC:  Yes they do.
BS:  And were they entered into the business records at or around the time those documents were created?
PC:  Yes they were.  They were input by a person with knowledge who did, it was input contemporaneously.

Furthermore, Tenn. R. Evid. 803(6) requires the foundation for the admission of business records to be provided by the testimony of "the custodian or other qualified witness" or by written certification.  The term "qualified witness" is generally interpreted broadly.  *Alexander*, 903 S.W.2d at 700.  The following principles govern:

> The key is that the witness must have knowledge of the method of preparing and preserving the business records at issue.  The Tennessee Supreme Court held that the witness must be able to testify as to the identity of the record, the mode of preparation, and whether the record was made in the regular course of business at or near the time of the event recorded in the business record.

Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, TENNESSEE LAW OF EVIDENCE § 8.11(11)(a) (6th ed. 2012) (footnotes omitted) (citing *Fusner v. Coop Constr. Co., LLC*, 211 S.W.3d 686, 693 (Tenn. 2007)).   On cross-examination, Mr. Cargioli testified that his job responsibilities included reviewing and verifying business records, supplying them to counsel, and testifying about them at hearings.  He further stated:

> Yes I am familiar with how records are created.  When I first started, like I said, as a Loan Servicing Specialist and Loan Adjuster, part of my job duty was to notate files and create the records that exist on files to some degree.  Although that's not my job function anymore, I had several hours of training and side-by-side training that gave me the experience and the know-how in order to testify to these types of matters.

Thus, Mr. Cargioli had the knowledge necessary to testify to the identity and mode of preparation of the records and to the fact that they were made in the regular course of the Bank's business.

Finally, Mr. Starkey complains that he did not have the opportunity to examine the records underlying the Damages Summary.  The transcript of the September 14, 2017 damages hearing, however, reveals otherwise.  Counsel for the Bank stated:  "And Your Honor, we have all of those documents [used to create Exhibit 1] here today.  We're going to be presenting them to the Court.  We are happy to let Mr. Starkey take a look at them."

We find no abuse of discretion in the trial court's decision to admit Exhibit 1.

(2) Exhibit 2: the Note.

Mr. Starkey's argument here is that the trial court erred in admitting a photocopy of the Note instead of requiring the original Note to be admitted into evidence because he challenges the authenticity of the Note. As the Bank points out, Tenn. R. Evid. 1003 provides: "A duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original." Any genuine issue as to the authenticity of the photocopy of the Note was resolved when the trial court ruled upon the Bank's motion for summary judgment. The trial court concluded that Mr. Starkey had "shown no evidence that would contradict Defendant's status as holder of the Note and Deed of Trust" and granted the Bank summary judgment on all of Mr. Starkey's claims, including his request for "declaratory judgment as to the holder in due course."

Mr. Starkey has failed to show that the trial court abused its discretion in accepting a copy of the Note into evidence.

(3) Exhibits 3, 4, 5, and 6: Deed of Trust, Bidding Instructions, Trustee's Deed, and Zillow.com Estimate.

Mr. Starkey makes various arguments that the trial court erred in admitting Exhibits 3, 4, 5 and 6. The transcript of the September 14, 2017 damages hearing shows, however, that Mr. Starkey failed to object to the introduction of any of these exhibits. Pursuant to Tenn. R. App. P. 36(a), this court is not required to grant relief to a party "who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Similarly, Tenn. R. Evid. 103(a) provides, in pertinent part:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> (1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context;

Thus, "in order to raise an issue on appeal regarding the admissibility of evidence, the party raising the issue must have made a contemporaneous objection." *McGarity v. Jerrolds*, 429 S.W.3d 562, 567 (Tenn. Ct. App. 2013). In the absence of such an objection, we generally consider the issue waived. *Id.*

We find no abuse of discretion in the trial court's admission of Exhibits 3, 4, 5, and 6, and we also consider the issue waived.

(4) Exhibit 7: Affidavit of Jonathan Cole in Support of Bank's Request for Attorney Fees

Mr. Starkey asserts that the trial court erred in admitting the affidavit of Jonathan Cole (Exhibit 7) because the Bank did not give him proper notice and time to examine the affidavit. At the September 14, 2017 hearing, however, the trial court ruled that the Bank needed to submit a more detailed record of the attorneys' time and that there would need to be another hearing in order to give Mr. Starkey a chance to review the information. In accordance with this ruling, the Bank filed Mr. Cole's second affidavit along with a more detailed record of the attorneys' time. Mr. Starkey filed an objection and motion to strike Mr. Cole's second affidavit. At the second damages hearing on November 29, 2017, the trial court heard arguments on the Bank's request for attorney fees and Mr. Starkey's motion to strike.

Mr. Starkey's arguments regarding the admissibility of Mr. Cole's first affidavit are moot because, during the first damages hearing, the trial court granted Mr. Starkey's request for additional time and ordered the Bank to provide additional details and documentation of the attorneys' time. At the second damages hearing, the trial court conducted a full hearing on Mr. Starkey's motion to strike Mr. Cole's second affidavit and on the Bank's request for attorney fees. Thus, contrary to Mr. Starkey's assertion, he had notice and the opportunity to examine the affidavit.

We find no abuse of discretion in the trial court's decision to admit the affidavit of Mr. Cole.

B. Testimony of Phillip Cargioli.

Mr. Starkey argues that the trial court erred in allowing Phillip Cargioli to testify as a witness at the September 14, 2017 damages hearing. He asserts that Mr. Cargioli was not sworn in as required by Tenn. R. Evid. 603, that the documents to which he testified were not originals, and that he "did not meet the conditions required to qualify for hearsay exceptions" under Tenn. R. Evid. 803(6).

Although Mr. Starkey failed to obtain a court reporter, the available transcript[3] includes the notation "Swearing in inaudible" prior to Mr. Cargioli's testimony. Thus, contrary to Mr. Starkey's argument, it appears that Mr. Cargioli was sworn in, as required by Tenn. R. Evid. 603.[4] Mr. Starkey did not make any objection or motion with regard to

---

[3] The transcript in the record was transcribed from recordings made by Mr. Starkey using a personal handheld recorder.

[4] Rule 603 of the Tennessee Rules of Evidence states: "Before testifying, every witness shall be required to declare that the witness will testify truthfully by oath or affirmation, administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so."

Mr. Cargioli testifying as a witness at the hearing. As discussed above with respect to Exhibits 3 through 6, a party may not object to evidence (or testimony) for the first time on appeal. *See* TENN. R. APP. P. 36(a). Under Tenn. R. Evid. 601, "[e]very person is presumed competent to be a witness except as otherwise provided in these rules or by statute."

We have already discussed the admissibility of the documents to which Mr. Cargioli testified. Moreover, the admissibility of these documents is not determinative of the admissibility of Mr. Cargioli's testimony. As to Mr. Starkey's hearsay argument, he fails to point to any specific statements made by Mr. Cargioli that he believes constitute hearsay. Without any specific objection, we consider such arguments waived.

We find no abuse of discretion in the trial court's admission of Mr. Cargioli as a witness qualified to testify in support of the Bank's claim for damages.

## II. Court Reporter.

Mr. Starkey argues that the trial court erred and violated his due process rights when it denied his motion to appoint a court reporter and his oral motion for a continuance of the September 14, 2017 hearing to allow him to retain a court reporter.

On September 11, 2017, three days before the first damages hearing (on September 14, 2017), Mr. Starkey filed a motion asking the trial court to appoint a court reporter for the September 14, 2017 hearing, citing Tenn. Code Ann. § 20-9-101, which states:

> Upon the trial of any cause or proceeding in any court of record, upon the request of either party, the judge of such court shall appoint a competent court reporter, who shall first be duly sworn to make a true, impartial and complete stenographic report of all the oral testimony given in trial of the cause or proceeding, as well as the rulings of the judge.

The courts have construed this provision as establishing a party's right to have a court reporter present at court proceedings. *See Warren v. Warren*, 731 S.W.2d 908, 909 (Tenn. Ct. App. 1985). In *Warren v. Warren*, the court determined that the trial court erred in refusing a party's request to have the court reporter at a conference in chambers. *Id.* The court quoted with approval the following language concerning a similar statute:

> In the absence of fault on the part of the litigant who insists on having the trial reported, a statute which provides that, upon the request of either party, the trial judge shall direct the reporter to take full stenographic notes of the proceedings, *is mandatory*.

*Id.* (quoting 75 AM.JUR.2D *Trial* § 58, p. 171). In another case, the court noted that, although the parties typically retain the court reporter, a trial court may use its authority under Tenn. Code Ann. § 29-9-101 to appoint a court reporter where there are two competing court reporters chosen by the parties. *Slaughter v. Slaughter*, 922 S.W.2d 115, 116 n.1 (Tenn. Ct. App. 1995).

In this case, neither party retained a court reporter to attend the September 14, 2017 damages hearing despite having ample time to do so. When there was no court reporter at the hearing, Mr. Starkey moved for a continuance due to the absence of a court reporter. The trial court asked him why there was no court reporter present, and Mr. Starkey responded that he had filed a motion requesting that a court reporter be appointed by the court. The court denied Mr. Starkey's motion, noting that the case had been set for some time and that Mr. Starkey should have had a court reporter present if he wanted one there.

In reviewing a trial court's decision to grant or deny a motion to continue, we apply the abuse of discretion standard. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997); *In re Lydia N.-S.*, No. M2016–00964–COA–R3–PT, 2017 WL 420344, at *4 (Tenn. Ct. App. Jan. 31, 2017). Mr. Starkey has not established that he was prejudiced by the trial court's decision, and we find no abuse of discretion in the trial court's denial of Mr. Starkey's motion for a continuance.[5]

III. Motion to Vacate Judgment/Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Mr. Starkey asserts that the trial court erred in denying his motions to dismiss for lack of subject matter jurisdiction and to vacate a void judgment.

A. Motion to Vacate Void Judgment.

On September 13, 2017, Mr. Starkey filed a motion pursuant to Tenn. R. Civ. P. 60.02(b)(3) asking the trial court to vacate its order of April 4, 2016, granting summary judgment to the Bank on its counterclaim for breach of contract. The motion includes the notation: "No hearing requested." In his memorandum in support of this motion, Mr. Starkey argued that the trial court "lacked subject matter jurisdiction to make a ruling based on void instruments using those void instruments to authenticate and base its conclusions and rulings." It was Mr. Starkey's position that the Note and the deed of

---

[5] Pursuant to Local Rule 7.03 for Tennessee's 16th District Chancery and Circuit Courts, when a motion is filed and contains language indicating that no oral argument is requested (as is the case with Mr. Starkey's motion requesting a court reporter, filed on September 11, 2017), the court will hold the motion for eight judicial days when the motion is served on the opposing party by mail in order to allow for a response by the opposing party. Thus, Mr. Starkey's motion was not filed in time for the court to rule upon it before the scheduled hearing on September 14, 2017.

trust were void instruments because he sent the Bank a letter on January 2, 2013, to rescind the loan.

Despite Mr. Starkey's failure to request a hearing on the motion to vacate, the Bank agreed to argue the motion at the damages hearing on September 14, 2017. The Bank argued that the trial court had considered a similar argument—that the loan was rescinded by Mr. Starkey—in the context of Mr. Starkey's earlier motion for judgment on the pleadings. The Bank briefly reiterated the same reasoning: that Mr. Starkey sent the letter after the three-year statute of repose for a rescission had passed and that, as a purchase money security interest loan, the Note fell under an exception to the right of rescission in the TILA. *See* 15 U.S.C. § 1635(e)(1), (f). The trial court overruled the motion to vacate.

We review a trial court's decision on a Rule 60 motion under an abuse of discretion standard. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). We find no abuse of discretion in the trial court's decision to deny Mr. Starkey's motion to vacate the trial court's order granting summary judgment.

B. Motion to Dismiss for Lack of Subject Matter Jurisdiction.

During the first damages hearing, Mr. Starkey made an oral motion to dismiss "for lack of subject matter jurisdiction because I believe the Note and Deed of Trust have been rescinded and declared void by the United States Supreme Court." This motion was based upon the same rescission argument discussed above and was denied by the trial court for the same reasons.

Under the circumstances, subject matter jurisdiction presents a question of law, which we review de novo with no presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). We find no error in the trial court's denial of Mr. Starkey's motion to dismiss.

IV. Rental Payments.

Mr. Starkey maintains that the trial court erred in granting the Bank damages for rental payments pursuant to the deed of trust. He takes the position that he could not be classified as a tenant of his own property and charged rent for living there. The Bank asserts that, under the terms of the deed of trust, when Mr. Starkey failed to vacate the property after it was sold to the Bank at the March 1, 2017 foreclosure sale, he became a tenant. Section 22 of the deed of trust provides:

> If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If

- 12 -

possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

In accordance with this provision, the trial court did not err in awarding the Bank the rental value of the property during the time period after the sale when Mr. Starkey continued to occupy it.

## V. Tender of Payment.

Mr. Starkey argues that the trial court erred in failing to consider his attempt to tender payment.

According to a copy of a letter dated January 7, 2013, sent by the Bank to Mr. Starkey, Mr. Starkey had tendered some type of document that did "not meet the terms of your note and mortgage loan that obligates you as the borrower to repay the loan in US currency." In its letter, the Bank stated: "The item you submitted is not legal tender and will not be accepted now or in the future as payment on the note or mortgage." The Note itself states that the borrower promises to pay "U.S. $ 280,000.00" plus interest. Thus, the obligation is to pay in U.S. currency, and Mr. Starkey did not tender payment in accordance with the terms of the Note as contemplated under Tenn. Code Ann. § 47-3-603, cited by Mr. Starkey.

We find no error in the trial court's failure to consider Mr. Starkey's attempt to tender payment on the Note.

## VI. Questioning of Witness.

Finally, Mr. Starkey avers that the trial court erred in denying his request to question the Bank's witness on the issue of the Bank's status as a holder in due course of the Note. The portion of the transcript (during the cross-examination of Mr. Cargioli) at issue reads as follows:

> DS [David Starkey]: Do you know who the holder [in] due course of this contract is?
> BS [Brittany Simpson, attorney for the Bank]: Your Honor, we would object to the Court. He's already made a ruling on that.
> JW [Judge Wilson]: Sustained. I believe . . .
> DS: Your honor I again object because holder [in] due course has never been addressed by this Court.
> JW: All issues regarding holder [in] due course have been decided by the Court. We're just here on the damages hearing.

In its April 15, 2016 memorandum and order granting partial summary judgment in favor of the Bank, the trial court made the following rulings regarding the Bank's status as the holder in due course of the Note and deed of trust:

> Chapter 3 of the Uniform Commercial Code, as adopted in Tennessee, maintains that a promissory note may be negotiated either by endorsing it to a specific person or entity or by endorsing it in blank. If an endorsement is made in blank, "an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." Tenn. Code Ann. § 47-3-205(b). When an instrument is endorsed in blank, the possessor of the instrument is deemed to be the "holder." Tenn. Code Ann. § 47-1-201(b)(21). The holder of a negotiable instrument, such as a promissory note, is the party who is entitled to enforce it. Tenn. Code Ann. § 47-3-301. Additionally, "it is well-settled Tennessee law that any assignment of a note automatically transfers beneficial ownership of the accompanying deed of trust." *Samples v. Bank of America, N.A.*, No. 3:12-CV-44, 2012 WL 1309135, *4 (E.D. Tenn. April 16, 2012).

> The Record in this matter clearly shows that Plaintiff executed the Note and Deed of Trust in favor of Defendant. The Note specifically provides that "I understand that the Lender may transfer this Note." The Deed of Trust similarly provides that "the note or a partial interest in the Note (along with this Security Instrument) can be sold one or more times without prior notice to Borrower." It is clear to the Court that the Note was endorsed in blank by Defendant's Vice President, Joan M. Mills. The Note was then sold [and] negotiated by transfer of possession to FHLMC. The note was then transferred and negotiated back to Wells Fargo on or around June 25, 2013. Upon transfer, the Note carried with it the assignment of the Deed of Trust to FHLMC and subsequently to Defendant as a matter of law. *See Branchant v. Wells Fargo Bank, N.A.*, No 14-5343, 2015 WL 3605883 (6th Cir. June 10, 2015). Because Defendant is the current holder of the Note, it is entitled to enforce it along with all beneficial interest pursuant to Tennessee law. *See* Tenn. Code Ann. §§ 47-1-201(b)(21) and 47-3-301 (2011). Plaintiff has shown no evidence that would contradict Defendant's status as holder of the Note and Deed of Trust. Accordingly, Defendant is entitled to summary judgment on Plaintiff's requests for (1) declaratory judgment as to the holder in due course, (2) declaratory judgment to quiet title to Property, (3) temporary and permanent injunction, and causes of action for (4) fraud in the inducement, (5) fraud as to the conveyance of the instrument, and (6) negligent misrepresentation.

(Footnote omitted).

In light of the fact that the Bank's holder in due course status had already been adjudicated by the trial court, the court did not abuse its discretion in sustaining the Bank's objection to Mr. Starkey's questions on the ground of relevancy.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, David B. Starkey, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE