# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 7, 2020

## JUNE C. HORTON, ET AL. v. ERIN E. COOLEY

**Appeal from the Chancery Court for Rutherford County**
**No. 18-CV-762      J. Mark Rogers, Judge**

————————————————————

## No. M2019-00945-COA-R3-CV

————————————————————

The maternal grandparents filed this action against their daughter, seeking court-ordered visitation with her four-year-old son, after she ceased their visitation during her parenting time. The daughter insisted that the grandparents accept her new husband and cease contact with the child's father, her ex-husband, before the grandparents could see her and the child again. The grandparents rebuffed their daughter's request, choosing to visit with the grandchild during the ex-husband's residential time instead. Following a trial, the trial court found, *inter alia*, that the daughter placed reasonable conditions on the grandparents' visitation pending a resolution of the family dispute, that there had not been a severe reduction in the grandparents' visitation with the child, and there was no danger of substantial harm to the child because the child continued to visit the grandparents on a regular basis. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Thomas H. Miller, Franklin, Tennessee, for the appellants, Danny D. Horton and June C. Horton.

Sean R. Aiello, Franklin, Tennessee, for the appellee, Erin E. Cooley.

## OPINION

June Horton ("Grandmother") and Danny Horton ("Grandfather") (collectively, "Grandparents") filed this petition for grandparent visitation against their daughter, Erin

Cooley ("Mother"), seeking court-ordered visitation with their grandson ("the Child"), pursuant to Tenn. Code Ann. § 36-6-306 ("the Grandparent Visitation Statute").[1]

The Child was born in December 2012 to Mother and her husband, Adam Whitford ("Father"). Mother, Father, and the Child lived together at first, but two months after his birth, Mother and the Child moved into Grandparents' home in Murfreesboro, Tennessee. At the end of an acrimonious divorce in 2014, Mother was named the primary residential parent, and the parents were awarded alternating weeks of residential time pursuant to the permanent parenting plan.

Mother was still living with Grandparents in the spring of 2016 when she became engaged to Gregg Cooley. Grandparents disapproved of what they considered to be a short engagement; nevertheless, Mother married Mr. Cooley ("Stepfather") in September 2016. Although Grandparents encouraged Mother to continue living in the Murfreesboro area, Mother and Stepfather moved into Stepfather's house in Nashville, Tennessee.

After moving to Nashville, Mother continued to work full-time as a teacher in the Murfreesboro area. During her weeks of residential time, Mother dropped the Child off at Grandparents' house before going to work. Thus, Grandparents continued to see the Child on weekdays every other week. Mother, however, left her position after the 2016-2017 school year to stay at home. Mother continued to bring the Child to Grandparents once or twice a week when she had residential time, and Grandparents enjoyed an occasional overnight visit with the Child. Significantly, however, because Grandparents refused to accept Stepfather as part of the family, Grandparents never visited the Child at Mother and Stepfather's home in Nashville.

In the meantime, Grandparents' relationship with Mother's ex-husband flourished, which caused additional tensions between Mother and Grandparents, and these tensions reached a breaking point on July 21, 2017, when Mother canceled a visit with Grandparents at the last minute.

Knowing that Mother was anguishing over the fact that Grandparents refused to accept Stepfather as a member of Mother's family, Grandparents had dinner with Father and the Child. When Mother learned of this, she confronted Grandmother. Later that evening, Stepfather called Grandfather and said Grandparents would not see the Child during Mother's residential time if they continued to see Father.

---

[1] The Child's father was initially a party to the action, but Grandparents dismissed the petition as to Father because they sought visitation only during Mother's parenting time.

Two and a half weeks later, on August 9, 2017, Mother sent Grandfather a text message. She expressed a desire to reconcile with Grandparents but implied they would not see the Child without agreeing to conditions:

> I want to be apart [sic] of your lives. I want my family to be apart [sic] of your lives. I know we aren't the traditional family being a blended one, but it would mean a lot to me to feel that we were all accepted by you both. I have not felt that you have accepted all of us.
>
> . . . . I really want you to be involved in not only [the Child's] life, but [also] my [step-]children's lives. But whoever is [involved] is going to agree to fit into the schedule that's best for them, to talk about the things that are helpful to their development, and to build into them what I think is important. . . . If you and mom can agree to that, we are all gonna be so happy. And if you can't, then that will make me very sad since I will miss you.

Grandfather responded, suggesting they "start by eliminating the threats, ultimatums, and boundaries," and he asked Mother to bring the Child to Murfreesboro. When Mother said she wanted to have a conversation without the Child present, Grandfather declined the offer, explaining he didn't "see any good coming from it anyway." He offered to avoid "controversial subjects" if Mother would bring the Child over for a visit. Mother clarified that future visits were contingent on Grandparents agreeing to stop seeing Father:

> I am trying to be as loving and honest and direct as possible when I say you will still see [the Child] and me when you stop associating with my ex-husband and allow us to parent how we feel is best without interference. . . . [I]f you want to continue to invest in a relationship with my ex-husband instead of with me and my new family, then [Stepfather] is right about you not seeing [the Child] on his time with me. That's not a threat. That's you choosing [Father] over your own daughter and her new family.

Grandfather responded by asking for a refund of the fees he had paid for a planned family cruise in October.

On August 17, 2017, Grandfather asked to see the Child, and Mother explained for a third time that future visitation was contingent on specific changes:

> I've tried to make it clear, but if there was any confusion . . . You and mom have a choice: You can agree to the values, expectations, and boundaries (like not seeing [Father]) we need to raise our children the way we've decided is best and you can remain a part of my new family's life . . . , or

you can continue to dismiss our needs, limits, and boundaries . . . and remain separate from us.

Less than two weeks later, on August 28, 2017, Grandparents filed their petition for grandparent visitation.

Meanwhile, Grandparents began attending the same church as Father and would sometimes have lunch with Father and the Child afterward. Grandparents also joined Father and the Child on birthdays and at holiday celebrations.

The case was tried over three days in February and March 2019, and the trial court entered its final order on April 29, 2019. The court concluded that the evidence did not warrant court-ordered visitation under Tenn. Code. Ann. § 36-6-306. As an initial matter, the court found that Mother did not "oppose" visitation, as required by the statute:

> The Court finds [Mother] credible in her testimony regarding her desires and efforts to repair her relationship with her parents, which were refused by her parents. [Mother] offered to meet with them and her new husband to talk through her concerns. [Mother] proposed family counseling. [Mother] continued to expect their attendance at a planned family vacation on a Disney cruise. All of these efforts were met, essentially, with silence or a[n] outright refusal from the Maternal Grandparents. Accordingly, [Mother] did not oppose visitation with the Maternal Grandparents in a way that meets the requirements of the statute . . . .

Further, the court found that Mother had not "severely reduced" Grandparents' visitation:

> Naturally, over time as [M]other and the [C]hild moved out and began developing new relationships and routines, the Maternal Grandparents' time with the [C]hild began to decrease. It was a decreased regularity with which the [C]hild and the Maternal Grandparents saw one another by the time these issues now presented arose. . . . [D]ue to the evolved nature of the Parties' relationship, this Court can't conclude that there was a severe reduction at the time of the filing of the Petition. Accordingly, the Court finds [Mother] did not severely reduce visitation with the Maternal Grandparents and the [C]hild in a way that meets the requirements of the statute.

Finally, the court found there was no danger of substantial harm to the Child because he was still seeing Grandparents regularly:

> [Father] does not oppose visitation with Maternal Grandparents, and, in fact facilitates such visitation. Maternal Grandparents get to see the [C]hild at church on the weekends during [Father]'s parenting time, and sit together.

Sometimes, Maternal Grandparents go to meals with them afterwards. Maternal Grandparents have been invited to birthday or holiday celebrations with the [C]hild through [Father]. Importantly, the Court finds there can be no cessation of the relationship while this manner of contact continues. Further, through testimony of the witnesses, this Court heard nothing to indicate that cessation may occur in the future. The substantial harm addressed in the governing statute results from the cessation or diminishment of the grandparents['] relationship. Here, there is no danger that such harm may result to the [C]hild.

Accordingly, the trial court held that Grandparents failed to carry their burden of proof, and it dismissed the action.

This appeal followed.

## ISSUES

Grandparents contend the trial court erred in finding that Mother did not severely reduce their visitation with the Child. They also contend the trial court erred in finding there was no danger of substantial harm or severe emotional harm to the Child.[2]

## STANDARD OF REVIEW

When a trial court makes findings of fact in a non-jury case, we review those findings "de novo upon the record, accompanied by a presumption of the correctness, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). To preponderate against the court's finding, the evidence "must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) (citations omitted). "We defer to the trial court's determinations of witness credibility because the trial judge could observe the witnesses' demeanor and hear in-court testimony." *Coleman v. Olson*, 551 S.W.3d 686, 694 (Tenn. 2018).

Our review of a trial court's conclusions of law is de novo, with no presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

---

[2] Grandparents also raised a third issue, but it is rendered moot by our decision. The issue reads: "Whether, assuming the first two issues are answered in the affirmative, awarding grandparent visitation is in the best interest of the Child."

ANALYSIS

We begin our assessment of the issues presented by acknowledging that a parent's child-rearing decisions are protected by Article I, Section 8 of the Tennessee Constitution so long as the parent's decision does not substantially endanger the welfare of the child. *Hawk v. Hawk*, 855 S.W.2d 573, 580–82 (Tenn. 1993). Thus, "[a]bsent some harm to the child, . . . the state lacks a sufficiently compelling justification for interfering with this fundamental right." *Id.* at 582. Furthermore, since the decision in *Hawk v. Hawk,* the Grandparent Visitation Statute has been amended to require a finding of "the presence of a danger of substantial harm." *McGarity v. Jerrolds*, 429 S.W.3d 562, 571 (Tenn. Ct. App. 2013) (citing 2000 Tenn. Laws Pub. Ch. 891 (H.B. 2297) (2000) (amending the Grandparent Visitation Statute to include a substantial harm component)). In other words, a court cannot order grandparent visitation without a finding "that the child will be in danger of substantial harm if visitation is not ordered." *Id.* at 570 (citations omitted).

Because of the great deference that courts give to parental decisions, the court must first determine whether the custodial parent opposed or severely reduced visitation.[3] *Clark v. Johnson*, No. E2017-01286-COA-R3-CV, 2018 WL 2411203, at *10 (Tenn. Ct. App. May 29, 2018); *see also Coleman*, 551 S.W.3d at 700. If this threshold element has not been established, then the court may not consider whether the child is at substantial risk of harm or whether visitation would be in the child's best interest. *Id*. Conversely, if the threshold element has been established, the court must then determine,

> whether there is a danger of substantial harm to the child if the child does not have visitation with the grandparent. The foregoing is based on three factors set out in Tenn. Code Ann. § 36-6-306(b)(1). In conjunction with this analysis, the court must also determine if the relationship between the child and grandparent is significant based on three more factors set out in Tenn. Code Ann. § 36-6-306(b)(2). [I]f the court finds that there is danger of substantial harm if the child does not have visitation with the grandparent, it must decide whether the visitation would be in the child's best interest based on seven factors under Tenn. Code Ann. § 36-6-307.

---

[3] A 2016 amendment to the Grandparent Visitation Statute "changed the threshold requirements for application of the Grandparent Visitation Statute insofar as the trial court may now consider ordering visitation upon a showing by the petitioning grandparent that visitation, and as a result the grandparent-grandchild relationship, **was severely reduced rather than requiring that visitation must have been opposed or denied by the custodial parent**." *Clark*, 2018 WL 2411203, at *10 (citing 2016 Tenn. Pub. Acts, ch. 1076 §§ 1–3) (emphasis added).

*McGarity*, 429 S.W.3d at 572 (quoting Marlene Eskind Moses and Jessica J. Uitto, *The Current Status of Tennessee's Grandparent Visitation Law,* Tenn. B. J., Jan. 2010, at 46, 24).

Grandparents allege that Mother severely reduced their visitation with the Child, and they assert that two of the six situations in § 306(a) exist.[4] It was undisputed that Mother removed the Child from Grandparents' home after living with them for more than twelve months. *See* Tenn. Code Ann. § 36-6-306(a)(5). It also was undisputed that Grandparents had a significant existing relationship with the Child for more than twelve months. Thus, Grandparents allege that the severe reduction of their relationship with the Child is likely to cause him substantial emotional harm. *See* Tenn. Code Ann. § 36-6-306(a)(6). However, Mother fervently disputes the allegation that the Child's visitation and relationship with Grandparents have been severely reduced. Consequently, Mother contends there is no basis for finding that the Child is likely to suffer substantial harm. We shall first discuss the claim that Mother severely reduced Grandparents' visitation.

## I. SEVERE REDUCTION IN GRANDPARENTS' VISITATION

The trial court found that Mother "did not severely reduce contact between the Maternal Grandparents and the [C]hild." The court went on to specifically find:

It is uncontroverted the [C]hild and the Maternal Grandparents saw each other every day or nearly every day of [Mother]'s parenting time while the [C]hild and mother resided with the Maternal Grandparents, but in 2016

---

[4] Tennessee Code Annotated §§ 36-6-306(a) (2016) provides, in relevant part:

(a) Any of the following circumstances . . . necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents or custodian or if the grandparent visitation has been severely reduced by the custodial parent or parents or custodian:

.     .     .

(5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent, parents, or custodian (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or

(6) The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance or severe reduction of the relationship, this relationship was severed or severely reduced by the parent . . . , and severance or severe reduction of this relationship is likely to occasion substantial emotional harm to the child.

when [Mother] remarried, that was no longer the case. At that time, the Maternal Grandparents still saw the [C]hild often when [Mother] used them to assist with child care while she was working, but at the time of the filing of the Petition, even that had ended as [Mother] was no longer working and in need of child care. Naturally, over time as mother and the [C]hild moved out and began developing new relationships and routines, the Maternal Grandparents' time with the [C]hild began to decrease. It was a decreased regularity with which the [C]hild and the Maternal Grandparents saw one another by the time these issues now presented arose. At the time of the filing of the Petition, the Maternal Grandparents had not had access to the [C]hild through [Mother] in approximately five (5) weeks. While this would have been considered a severe reduction at the time everyone was living together, due to the evolved nature of the Parties' relationship, this Court can't conclude that there was a severe reduction at the time of the filing of the Petition. Accordingly, the Court finds [Mother] did not severely reduce visitation with the Maternal Grandparents and the [C]hild in a way that meets the requirements of the statute.

For the evidence to preponderate against the trial court's findings, it "must support another finding of fact with greater convincing effect," *see State ex rel. Flowers*, 209 S.W.3d at 599, and the evidence in the record does not preponderate against the trial court's findings. Therefore, we affirm the trial court's determination that Mother did not severely reduce Grandparents' visitation with the Child.

As noted above, for the court to intervene in Mother's child-rearing decisions regarding visitation, Grandparents were required to show that Mother opposed or severely reduced Grandparents' visitation and that one of six situations existed pursuant to Tenn. Code Ann. § 36-6-306(a). They failed to do so. Because Grandparents' relationship with the Child was not severed or severely reduced, their claim for grandparent visitation under § 36-6-306 has been rendered moot. *See Keisling v. Keisling*, 196 S.W.3d 703, 725 (Tenn. Ct. App. 2005) (holding grandparent's petition was moot because they still saw the child on a regular basis). Thus, we are not required to consider whether there is a danger of substantial harm to the Child if the Child does not have visitation with the Grandparents. *See* Tenn. Code Ann. § 36-6-306(b)(1); *Clark*, 2018 WL 2411203, at *10. Nevertheless, in the interest of judicial economy and as the trial court chose to do, we shall also determine whether the record supports Grandparents' contention on this issue.

## II. SUBSTANTIAL HARM

Grandparents contend the trial court erred in finding the Child was not in danger of substantial harm without court-ordered visitation for Grandparents. They presented no evidence to support this allegation. Instead, they are relying solely on the rebuttable

presumption of irreparable harm created by Tenn. Code Ann. § 36-6-306(a)(5). This presumption applies when the child "resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent." *Id.*

It is undisputed that § 306(a)(5) applies in this case. While the trial court did not expressly address the presumption created by this section, it is implicit from a review of the record that the presumption's effect was considered by the trial court. Moreover, if the failure to expressly address the presumption was erroneous, such error would be harmless because the court's order contains ample findings of fact and conclusions of law to rebut the presumption that § 306(a)(5) creates.

The trial court found that "a significant relationship undoubtedly exists between the [C]hild and the Maternal Grandparents." Nevertheless, the trial court also found "there is no indication that the relationship between [the] Maternal Grandparents and the [C]hild will be severed and, therefore, no substantial harm can result." The trial court also noted and correctly found:

> [Father] does not oppose visitation with Maternal Grandparents, and, in fact facilitates such visitation. Maternal Grandparents get to see the [C]hild at church on the weekends during [Father]'s parenting time, and sit together. Sometimes, Maternal Grandparents go to meals with them afterwards. Maternal Grandparents have been invited to birthday or holiday celebrations with the [C]hild through [Father] . . . . The substantial harm addressed in the governing statute results from the cessation or diminishment of the grandparents' relationship. Here, there is no danger that such harm may result to the [C]hild.

The record fully supports these findings. Thus, the trial court correctly concluded there was no presence of the danger of substantial harm to the Child. The relevant period for purposes of the statute is the period between the date of the qualifying circumstance under § 306(a) and the date the petition is filed. *See Coleman*, 551 S.W.3d at 700. The Grandparent Visitation Statute defines "severe reduction" as "reduction to no contact or token visitation as defined in § 36-1-102." Tenn. Code Ann. § 36-6-306(f). In turn, § 36-1-102 defines "token visitation" as "visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." *Id*. § 102(1)(C). "[T]he statutory definition does not describe a reduction in visitation <u>in comparison to</u> any visitation the grandparents may have enjoyed previously." *Clark*, 2018 WL 2411203, at *13 (emphasis in original). As the trial court noted, Grandparents' visitation gradually and naturally decreased after Mother "removed" the Child from Grandparents' house by moving in with Stepfather. By the time Mother stopped visitation during her parenting time, Grandparents were already

seeing the Child during his time with Father. Thus, Grandparents' visitation was never reduced to "token" as that term is defined in the statute.

For the foregoing reasons, the evidence does not preponderate against the trial court's determination that there is no presence of danger of substantial harm to the Child.

## CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants, Danny D. Horton and June C. Horton.

_____
FRANK G. CLEMENT JR., P.J., M.S.